No. 13,785.

SALEM BRICK AND LUMBER COMPANY VS. LOUIS LESASSIER ET ALS.

106 389
113 1103
e114 300
106 389
e115 673

### SYLLABUS.

A bond given by a contractor to the owner (and not falling within the operation of Act 180 of 1894) to secure the carrying out of a building contract, and which merely recites the obligations of the building contract in order to show the conditions upon which the obligation of the bond, to such owner, are to become void, does not bind the surety for the obligations of the con tractor, under the building contract, to laborers and material men, and the latter have no right of action against such surety.

I N RE Fidelity and Deposit Company of Maryland, applying for *certiorari,* or writ of review, to the Court of Appeal, Parish of Orleans, State of Louisiana.

---

*Purnel M. Milner,* for Applicant.

---

*McCloskey & Benedict,* for Salmen Brick and Lumber Company, Respondent.

---

The opinion of the court was delivered by

MONROE, J. This is an application for the review of a judgment rendered by the Court of Appeal for the Parish of Orleans. The

record, together with the opinion upon which the judgment is predicated, having been sent up, agreeably to an order to that effect, disclose the following, as the case to be decided:

In November, 1896, the Salmen Brick and Lumber Company brought suit, in the Civil District Court, alleging that Louis LeSassier, and the Fidelity and Deposit Company, of Maryland, were, *in solido,* indebted to it in the sum of $1,036.82, with lien, and privilege, and legal interest from judicial demand, and costs, for this, to-wit: "That petitioner sold and delivered to said LeSassier certain brick and lumber, to the amount stated, which were used by said LeSassier in the construction of certain improvements contracted for by said LeSassier with one John Henderson, Jr., of New Orleans; that the Fidelity and Deposit Company bound itself, as surety, for said LeSassier under his contract with said John Henderson, Jr.,; that said LeSassier has failed and refused to pay petitioner, and both said LeSassier and said Fidelity and Deposit Company are bound, *in solido,* to your petitioner." And there is a prayer for citation and judgment, etc.

To this petition, the Fidelity and Deposit Company excepted that it was too vague and indefinite, etc., and nothing further was done for a year, when the exception of no cause of action was filed. Thereafter, LeSassier having entered no appearance, a judgment by default was taken against him, and the Fidelity and Deposit Company answered that the plaintiff, not having brought suit under Act 180, of 1894, and not having annexed to it's petition either the contract or the bond sued on, and having made no allegation entitling it to a direct action against said defendant company, should be dismissed out of court.

A year later the case was put on the call docket, on motion of counsel for the Fidelity and Deposit Company, who, upon the trial, filed a plea of novation, as a peremptory exception; after which there was judgment rejecting plaintiff's demand as against said company, and confirming the default against Le Sassier. And, from the judgment so rendered, in so far as it rejected it's demand, the plaintiff appealed to the Court of Appeal, and obtained a reversal, the Fidelity and Deposit Company being condemned by the appellate court in accordance with the prayer of the petition. It is this judgment, of the appellate court, which, at the instance of the party condemned, we are now called on to review.

Upon the trial of the case in the District Court, the counsel for the defendant company objected to all evidence tending to fix any liability

on his client, on the ground that it was not authorized by the pleadings, and he, particularly, objected to the offer of the bond produced by the plaintiff, on the ground that no such bond had been declared on, and that the bond offered was in favor of Henderson, and not of plaintiff, which objection was overruled. Thereafter, other evidence was offered, and, upon the case, as thus presented in the trial court, we find the following facts, to-wit:

In April, 1896, Louis LeSassier undertook, by written contract with John Henderson, Jr., "to repair and build, in accordance with the plans and specifications, furnished by him, of Delogny sugar house, all the work shown on the plans, or mentioned in the specifications, or reasonably implied." And he agreed to give to said Henderson, a bond, in the sum of $5,000, "In the Fidelity and Deposit Company, of Maryland, as a guarantee to complete the work in accordance with the plans and specifications, and to pay for all labor and material." He further agreed to begin the work on April 27th, 1896, and to complete it within seventy working days, under penalty of $10 per day for each day of delay beyond that time, Henderson to furnish quarters for twenty-five men, and to pay LeSassier $10,396, in installments, "said payments to be made about the end of each month, for the work done and material furnished during that month, less 20 per cent., which is" (was) "to be held back by the owner until the work is" (was) "completed, when the amounts remaining due are" (were) "due and payable." To this, there was added a stipulation that there should be no "extra" work.

The bond referred to is a bond in which LeSassier, as principal, and the Fidelity and Deposit Company, as surety, bind themselves to John Henderson, Jr., upon the following conditions, to-wit:

"Whereas, said pricipal has entered into a certain written contract bearing date the 24th of April, 1896, if the said principal shall well and faithfully perform all the obligations assumed by him in said contract, as regards the said John Henderson, Jr., owner, and shall fully pay all sub-contractors, laborers, mechanics, workmen and furnishers, thereon, then this obligation and bond shall become null and void, otherwise to remain in full force and effect." The bond contains, also, the following: *"Provided,* that said surety shall be notified in writing of any act on the part of the said principal, or his agents or employees, which may involve a loss, for which said surety is responsible hereunder, immediately after the occurrence of such act shall

have come to the knowledge of the duly authorized representative, or representatives, of said John Henderson, Jr., who shall have supervision of the said contract, and a registered letter, mailed to the president of said surety, at its principal office in Baltimore City, Md., shall be deemed sufficient notice within the meaning of this bond. *Provided,* further, that if the said principal shall fail to comply with all the considerations of the said contract, to such an extent that the same shall be forfeited, then said surety shall have the right and privilege to annul said contract, and to sublet or complete the same, whichever the said surety may elect to do, provided it is done in accordance with said contract."

"*Provided,* further, that, in the event of the breach of any of the conditions of this bond, said surety shall be subrogated to all the rights and properties of said principal, arising out of said contract, and all deferred payments and any and all monies and properties at this time due and payable, or that may thereafter become due and payable, to the said principal, under and by virtue of said contract, shall be credited upon any claim the said John Henderson, Jr., may make upon said surety because of said breach."

LeSassier began work under the contract thus entered into, and the brick and lumber for which the plaintiff is now claiming were shipped to him, at Delogny plantation, in the Parish of St. James, where the work was being done. He was, however, allowed by Henderson to draw largely in advance of the contract, so that, by July 20th, he had drawn $9,500, leaving a balance of only $896 to become due upon the completion of the work, which was still far from completion. He was not put in default, but Henderson contented himself with obtaining, through the intermediation of the representative of the defendant company, his (LeSassier's) consent that the work should be completed by him, Henderson, or said company; and, if completed at all, it was completed by Henderson, at an expense which, including the payments made to LeSassier, exceeded the amounts called for by the latter's contract.

As to the plaintiff, its agent testifies that he understood before the material for which the present claim is made, was furnished, that there was a written contract between Henderson and LeSassier and that the latter had given Henderson a bond, but he did not inform himself of the conditions of the contract, or bond, nor do we understand him to say that he considered that the bond was given for plaintiff's benefit.

He further states that an attested account was served on Henderson, and, *he thinks,* was recorded, but he made no effort to enforce any lien against the building; and he instructed his attorney not to sue Henderson. Henderson, himself, correcting his testimony a few days after it had been given, says: "Further thought has brought to my recollection an interview with Mr. Salmen." (plaintiff's representative.) "Knowing that the latter was one of the largest (if not the largest) creditors of LeSassier, I went to see him during the construction of the work on which this suit is based, and asked him how he was getting along with LeSassier, regarding payments. He replied that Louis was all right. A considerable time after this conversation, Mr. Salmen told me that he had accepted, in payment from LeSassier, a certain amount in cash, and took notes for the balance; that, when the notes fell due, LeSassier failed to meet them, and that he, Salmen, was compelled to take them up."

Upon the case, as thus presented, our learned brethren of the Court of Appeal reached the conclusion: (1) That the exception addressed to the vagueness of the plaintiff's petition should have been maintained, but that it would serve no useful purpose, at this time, to review the ruling of the district judge on that point. (2) That the bond given by the defendant company, to Henderson, contains a *stipulation pour autrui* of which the plaintiff is entitled to avail itself. (3) That no such novation of the plaintiff's claim against LeSassier has been shown as to discharge the defendant company from its liability to the plaintiff.

We are not asked to review the ruling on the defendant's exceptions, and, as we are of opinion that the plaintiff had no legal claim against the Fidelity and Deposit Company, there can be no question as to the novation of such claim.

The Court of Appeal, in holding that the Fidelity and Deposit Company incurred a contractual liability in favor of the plaintiff, by reason of its becoming the surety of LeSassier with respect to his building contract with Henderson, has, we think, confused the relations of the parties, and their obligations, as arising from the building contract and the contract of suretyship, respectively. In the building contract, LeSassier agreed with Henderson that he would do certain building and repairing; that he would furnish the labor and material; that he would pay for the same; and that he would give a bond to secure Henderson with respect to the faithful performance of those

394        SUPREME COURT OF LOUISIANA,

Brick and Lumber Co. vs. LeSassier et als.

different obligations. Under that contract, apart from the special laws governing the subject, if the laborers and material men had been unable to show definitely that they had been employed by, or had furnished materials on the order of LeSassier, they might well have relied upon the stipulation whereby, in his contract with Henderson, LeSassier had agreed to pay them, and, accepting that stipulation, they might have compelled him to comply with such agreement.

But the contract of suretyship contained no stipulation or agreement in favor of any one except Henderson, nor was it intended for the benefit of any one else, and the benefit to result to him was made dependent upon certain conditions. By that contract, LeSassier and the Fidelity and Deposit Company acknowledged that they owed and, impliedly, promised to pay, not to laborers or material men employed by LeSassier, but to *Henderson,* the sum of $5,000; *provided,* however, that the debt should be considered cancelled and the obligation avoided by the faithful fulfillment on the part of LeSassier of the obligations of the building contract. The Fidelity and Deposit Company did not agree that in the event of LeSassier's failure to pay his laborers and material men, it, the Fidelity and Deposit Company, would pay them, but that it would pay *Henderson,* provided he complied with his own obligations, the sum of $5,000, or so much of that amount as he might be compelled to pay by reason of LeSassier's failure or default.

Observe the obligation of the bond. It consists of an acknowledgment that the principal and surety owe *Henderson* $5,000, for which they firmly bind themselves, and which, by necessary implication, they promised to pay to the person to whom they acknowled the indebtedness. Then comes the condition, by reason of, or upon compliance with, which the obligation is to be considered cancelled. This condition begins with a preamble, which recites LeSassier's obligations under the building contract, followed by the condition, proper, to the effect that, if those obligations are fulfilled, the obligation represented by the bond, *to pay Henderson $5,000,* shall become void.

We find nothing in conflict with these views in the authorities cited in the opinion of the respondent court. In Flower vs. Lane, 6 N. S. 152, which is particularly referred to, it appears that Flower was the creditor of a steamboat, which the defendants had purchased, by an act wherein it was stipulated "that they" (the purchasers) "shall assume, and they do hereby assume, the payment of all claims now due to" (by) "the said steamboat, without any recourse against either

the vendor or his heirs," etc.; and the defendants were held liable to Flower, as a person holding a claim due by the boat, *according to their agreement to that effect.*

It is not pretended that this claim falls within the operation of Act No. 180 of 1894, but the fact that such an act was passed indicates that, in the opinion of the law-makers, the laborer and the material man has, otherwise, no direct action on the bond given by the contractor to the owner.

For these reasons, it is ordered, adjudged and decreed, that the judgment which is here made the subject of review be annulled, avoided and reversed, and that this case be remanded to the Court of Appeal, for the Parish of Orleans, with instructions to give judgment, in the matter of the Salmen Brick and Lumber Company vs. Louis LeSassier *et al.,* affirming the judgment of the District Court, in favor of the Fidelity and Deposit Company, of Maryland.