————o————

No 3221.

(Court of Appeal, Parish of Orleans.)

## WIDOW ISAAC LICHTENTAG vs. M. FEITEL ET ALS.

1. Act 180, approved July 12, 1894, relative to contracts for building and the security of workmen and furnishers of materials, imposes no *duty* upon the owner of the building to record the contract and bond, in order to safeguard and protect his rights against his obligors, the principal and surety on the bond. The latter's liability on the bond is not measured by the law of registry.

2. This act simply confers a right on the owner, which he may or may not avail himself of at his pleasure, to, by timely registry of the building contract and the bond, escape the penalty of

being personally liable for all balances due the workmen, laborers and furnishers of materials used in the building. The penalty for non-registry does not go beyond this.

3. So also have the workmen and furnishers of materials their individual right of action against the surety on the bond notwithstanding the non-registry of the contract and bond; and in this event they may also recover of the owner, in solido, with the surety on the bond.

4. Statutory bonds must be tested by and construed with reference to the law under which they are given. That which is superadded must be rejected and that which is omitted supplied.

5. When the interest of the parties to a contract is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule of construction.

6. Where one by his words or conduct causes another to believe in the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time.

Appeal from Civil District Court, Division B.

E. H. McCaleb, Jr., A. B. Leopold and H. W. Robinson, for plaintiff and intervenor.

C. F. Claiborne, for intervenor and appellee.

Armand Romain and Sol. Wolff, for defendant and appellant.

MOORE, J. This litigation grows out of a building contract and involves construction and interpretation of Act No. 180 of 1894 entitled: "An act relative to contracts for buildings and the security of workmen and furnishers of materials," to the extent of ascertaining and determining what measure of security is accorded to workmen and furnishers of materials, and what are the relative rights and obligations of owner, of undertaker and of the latter's surety, *inter sese*, and as to the workmen and material men, under said act.

It appears that on the 15th day of May, 1902, the plaintiff entered into a notarial contract with John H. Petry, whereby, for a stipulated sum to be paid by the plaintiff at stated periods, Petry was to erect two certain buildings according to plans and specifications made part of the contract, on the property owned by the plaintiff; all materials to be furnished by the said builder or under-

taker. It was stipulated in the contract that "inasmuch as the contractor has not furnished a surety at the signing of this contract but agrees and binds himself so to do on or before the foundations, sills and joists are laid...... none of the payments......to be made ......until such bond and surety is furnished."

Subsequently, on the 7th day of June, 1902, Maurice Feitel intervened in the act and bound himself "jointly and in solido with John H. Petry in the full sum of $3485.00 (the amount of the contract) for the faithful performance of and execution by the said Petry contractor, of the said contract, in conformity with the plans, drawings, specifications and general instructions therein specified and referred to as part thereof, etc." On the 10th day of June, 1902, the contract and bond was recorded in the Mortgage office. *At this time the work of construction had not been commenced.* Simultaneous with the signing of the bond by him, as surety, Feitel required of and obtained from Petry a written authorization on the plaintiff to pay over to him, Feitel, "all payments due and to become due under the contract." This was accepted by the plaintiff and Feitel collected thereunder the sum of two thousand dollars from time to time as the payments matured.

On the 19th of August, 1902, Petry defaulted on this contract and abandoned the work, whereupon, his surety authorized the plaintiff, in writing, to complete the same at his, Feitel's expense.

Under this authorization the owner completed the buildings expending $912.60. Of this sum $729.95 was actually employed in the completion of the buildings and the sum of $188.65 was paid to laborers for wages due them for work done before Petry's default, in accordance with Feitel's authorization to plaintiff so to do. Having paid to Feitel in cash, as per Petry's written instruc-

tions...............................................$2000 00

And having expended for the completion of the building

after Petry's default...............................  912 60

There remained a balance due by plaintiff under said con-

tract of............................................  572 40

To complete the amount plaintiff obligated herself to pay,

to wit.............................................$3485 00

At a time a number of furnishers of materials, whose claims aggregated $1840.79, had recorded liens against plaintiff's property and had instituted suits against her and the surety on Petry's bond to recover judgments against them *in solido* for the amount of their respective claims. Thereupon plaintiff, depositing in the registry of the Court the balance due on her said contract, $572.40 formed a concursus and cited all parties in interest to assert whatever rights they had against this fund; all the independent suits being consolidated with this proceeding. The Lhote Lumber Manufacturing Company, asserting a claim of $1017.74 being for materials fur-

174

nished, intervened in the concursus and, alleging that inasmuch as the contract between the plaintiff and Petry exceeded one thousand dollars and as no contract and bond were recorded within one week after the contract was signed and before the work was commenced, the plaintiff, with the surety on the bond, are, under the provisions of Act No. 180 of 1894, liable *in solido* to said company for the amount of its claim, prays judgment *iu solido* against the said owner and the said surety on the undertaker's or contractor's bond.

To both the petition of the plaintiff in the concursus, and to the petition of intervention of the Lhote Manufacturing Co., Feitel interposed exceptions of no cause of action, and upon their being overruled filed answers specifically denying any liability on the bond for the reason, substantially, that he was discharged from his obligation as surety because the contract and bond were not recorded within one week after the contract was signed and before the work was commenced.

To the Lhote Company's petition in intervention Mrs. Lichtentag answers, substantially, that the contract and bond were duly recorded in the Mortgage office "before the work had been commenced and before any materials or supplies had been furnished to said buildings;" that the Lhote Company had recognized Feitel as the surety, called on him several times, demanded payment of its bills and in fact accepted two separate payments from him on account of its claim; that before any supplies or materials were furnished to the contractor by the Lhote Company the latter first received the sanction and approval of said Feitel, surety, for the same who guaranteed their payment; that by the conduct and acts of said intervenor, it is estopped from denying that said Feitel is the surety, and estoppel is specially pleaded.

There was judgment ordering a distribution among the intervenors of the sum of $572.40, amount deposited by the plaintiff; cancelling the liens and privileges recorded against the buildings; rejecting the demands of the intervenors for a personal judgment against Mrs Lichtentag; and awarding judgment in favor of the several intervenors against John H. Petry and Maurice Feitel, his surety, for the amount of their respective claims, reserving to them the right to proceed against Mrs. Lichtentag in the event of said intervenors being unable to realize their respective claims out of Maurice Feitel and in the event said Maurice Feitel should become insolvent.

From this judgment the Lhote Company and Maurice Feitel alone appeal. As Feitel's pleas of no cause of action are founded on the same ground as that urged by the answer, they will be considered with the merits. As stated, the building contract was signed on the 15th day of May, the bond twenty-three days thereafter—June 7; both, however, were recorded within one week after the

175

signing of the bond and before the work was commenced. The argument of the learned counsel for the appellant, Feitel, the surety on the bond, is, substantially, *first:* that where, as in the instant case, the bond is furnished ostensibly under the Act of 1894, and the bond and the contract, the faithful execution of which the bond is intended to secure, are not recorded in the Mortgage office within the period prescribed by the Act, the penalty is that the owner of the building shall *alone* become liable for all balances due to the workmen and furnishers of materials used in the building, and that as a consequence of the personal liability thus imposed on the owner the surety on the bond is discharged therefrom as against the owner, the workmen and the furnishers of materials. *Second,* that even if the surety, in the event stated, is not absolutely and completely discharged from all liability under the bond, nevertheless, he cannot be held to respond to an obligation not covered by the terms of the bond; that, hence: as it is sought in this proceeding to hold the surety liable for the amount due the L'Hote Co: for materials furnished the building, and as the bond declared or contains no obligation, "for the payment," in the language of the act "of all workmen, mechanics and laborers and all those who furnish materials and supplies actually used in the building," no recovery therefor can be had against the surety; and, *Third.* should it be held that whilst the bond sued on has not the force and effect of a bond under the Statute *supra,* but is simply a conventional bond and outside of the statute, that then and in that event, and regardless of whatever rights the plaintiff may have thereunder, the L'Hote Company may not have its individual action thereon as it contains no *stipulation pour autrui* to its avail: and in support of this last contention the case of the Salmen Brick and Lumber Company vs Louis Lessassier et als, 106 La. 389 is relied on.

## I.

In H Weston Lumber Co. vs. Anderson & Allen et als, No. 1517 of the docket of this Court (14 June 1899) and again in Lambert Bros. vs. Mutual Building and Homestead Association Nos. 1551 and 2251 consolidated (April 9th, 1900,) the precise question presented by the first point *supra* received decision by us. To practically similar arguments in both cases, we said :

"The fundamental error of this process of reasoning is in the erroneous assumption that the act of 1894 imposes a *duty* upon the owner to record the contract and the bond, and in the equally mistaken postulate that the surety's liability to the Homestead Association, if it is liable at all, springs from or has its source in the Act of 1894, or is to be measured and determined by the law of registry.

The Act of 1894 *supra,* does not, nor indeed does any statute

176

or any rule of equity impose any obligation or duty on the part of the owner to cause either bond or contract to be recorded in order to safeguard and protect his rights against his obligors, the principal and surety on the bond.

It imposes no *duty*. It simply *confers* a right on the owner which may or may not be exercised by the owner as his fancy, caprice or interest may suggést...The right to secure the faithful performance of a building contract on the part of the builder or contractor and to secure same by the intervention and obligation of a surety, is a right which existed prior to the enactment of the statute of 1894, and exists since, outside of and despite that Act.

So far as concerns the point at issue, that Act simply and solely provides that if the owner, after receiving such a bond, causes it and the building contract to be duly recorded, he may not be personally pursued for the claims of the workmen and furnishers of materials, nor his property encumbered by liens and privileges therefor.

If the owner's confidence in the integrity and financial responsiblity of the principal and surety are such, or if for any cause of whiich he is the sole judge, he may determine, that it is not necessary to record the bond and contract, the *sole* penalty which he incurs thereby is that he will be made answerable with the principal and the surety on the bond for the claims of the workmen and furnishers of materials. The *penalty does not go one step beyond this.*

His right to recoup for such payments, if he has made them, or if sued therefor, is not lost to him against the builder, nor against the *latter's security, who has bound himself for the faithful execution of the contract on the part of the builder*, if he does not record the bond".

We have no reason to change our views as then expressed; on the contrary, we are fortified in them by reason of the fact that in both cases applications were made to the Supreme Court for writs of review therein and they were denied, thus practically affirming our decree therein.

In the cases cited the contest was between the owner and the surety; here the furnisher of materials is likewise a party, but the reasons adduced apply with equal force in favor of any and all persoms whom the statute accords a right of action on the bond. In no event and as against no one is the surety's liability to be measured by any law of registry.

The object of registry is public notice and not for the purpose of either determining the rights, or fixing the obligations, of sureties.

## II.

The answer to the surety's second construction to the effect

177

that the terms of the bond do not bind him to the payment of the claims of the material men and that hence the judgment against him and in their favor must be reversed, is three-fold.

Firstly it is clear that the bond was intended to be given in compliance with the statute. It was so understood, interpreted and acted upon by the surety and all parties. It is upon that theory that the surety bases his defense, for he seeks to escape liability from the bond by invoking and applying the provisions of the Act of 1894. The bond is therefore a *statutory bond* and must be tested by, and construed with reference to the law under which it was given, The rule in such case is that what is superadded in the bond must be rejected and that which is omitted supplied. The purpose of the bond contemplated by the Act of 1894 is that it shall stand as security "for the payment of all workmen, mechanics and laborers and all those who furnish materials and supplies actually used in the building." Under the rule stated this obligation, if omitted from the bond, is supplied.

Secondly, the bond stipulates that :

"The conditions of this obligation is such that if the said John Petry ,contractor, shall commence, prosecute and finish said building. and work in the manner and within the time specified in said contract, and in conformity with said plans, drawings and specifications and general instructions, *and shall in every respect conform and comply with tne conditions of said contract*, then this obligation is to be void and null and the said security discharged, otherwise same to remain in full force and effect.

The "conditions of said contract" and the plans, specifications, drawings and general instructions which are annexed to and specially made a part of the contract provide, *inter alia*, that the builder or contractor Petry, is to "*furnish all the materials*" to be used and employed in the buildings and to turn over "the buildings and premises to the owner *complete* and *finished* in every respect and particular" for the stipulated price, $3485.00. Petry's obligation under his contract was, assuredly, to furnish materials without cost to Mrs. Lichtentag, the owner; and to the extent that Petry was bound so was his surety. Under the very terms of the bond the surety's liability for the cost of the materials is fixed ; and *Thirdly,*, if there be any doubt as to the true sense of the words of the condition of the bond, that is to say of the stipulation that Petry "should in every respect conform and comply with the conditions of said contract," the construction thereof by the manner in which it has been executed and carried out by all parties thereto furnishes a rule of construction. C. C. 1956.

How was it executed ? The surety was at the moment of signing the bond authorized by his principal, Peltry, to collect all payments due under the contract; he actually received $2000 on account

178

thereof; he paid off some of the material men, himself among the number; he directed Mrs. Lichtentag to pay the balance due the workmen; upon Petry's default he authorized Mrs. Lichtentag to complete the building at his expense; he advised the furnishers of materials that he would pay their claims, and in the case of the L'Hote Company he advised them prior to their selling and delivering the materials furnished by them that he was Petry's surety and would be responsible for their bill, and on the strength thereof the materials were delivered, much less might have been done by the surety to have given the construction to his compact which the furnishers of materials, the appellees here, contend for, and which we affirm.

III.

Inasmuch as we are of opinion that the bond is the statutory bond we are dispensed from considering the third contention of the surety to the effect that if the bond be purely a conventional bond, the material men have no individual right of action thereon, as it does not contain a *stipulation pour autrui*.

There is left to be disposed of the contention of the other appellant, the L'Hote Company, to the effect that in addition to its judgment against the surety on the bond it should have judgment in *personam* also against Mrs. Lichtentag.

As we have stated in discussing the first proposition urged by the surety on the bond, the failure of the owner of the property, the plaintiff herein, to timely record the bond and contract, renders her liable, *personally*, for the claims due the workmen and the furnishers of materials; and unless her plea of estoppel urged against the L'Hote Company is not well founded. the judgment in this particular must be amended in the latter's favor.

It is a well settled principle of law that where one by words or actions incidentally or carelessly induces another to do or to omit doing an act to the latter's detriment, which he would not ntherwise have done or omitted, he is precluded from asserting a fact inconsistent therewith. This rule of law is well expressed by Lord Denman in the case of Pickard vs Sears 6 Ad. & E. 469 to-wit : "Where one by his words or conduct wilfully causes another to believe in the existence of a certain state of things and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time," This is the equitable estoppel, as available at law as in equity. Of course to constitute equitable estoppel the party against whom the estoppel is sought must have gained some advantage for himself or produced some disadvantage to another by the words or actions which constitute the estoppel.

The evidence conclusively establishes the fact that the materials furnished by the L'Hote Company and which are presently sued

179

for were supplied after the execution and *on the faith* of the bond. Pending the execution of the building contract the L'Hote Company inquired of Feitel who would be the surety on Petry's bond and were assured by Feitel that he, Feitel would be and that he would pay the bills, and a bill of goods purchased by Petry of the L'Hote Company *before* the execution of the bond was actually paid by Feitel on the day the bond was signed.

Other payments were made to that Company by Feitel. Repeated communications were had between the Company and Feitel concerning its bill. When payments failed the Company called on Feitel to ascertain when he would pay and were assured that he, Feitel, would pay the bill as soon as the buildings would be accepted by the owner. All of the dealings of the Company, so far as concerns the payment of its bill, was had with Feitel; it looked to him alone for payment, and the credit was given on the faith of Feitel's bond and the promise repeatedly made to the Company to pay, after the debt had been incurred as well as during the progress of its creation. Before any of the supplies or materials were furnished the contractor, the L'Hote Company received the sanction and approval of the surety therefor.

It is made quite evident from the testimony of the President of the Company that the credit was extended *solely* on account of the Company's information from Feitel that he would be the surety and it was continued on the faith of the execution of the bond and Feitel's promise to pay.

The Company never intimated to Mrs. Lichtentag, nor does the testimony suggest that there was ever any person on whose faith the credit would be extended, except that of Feitel.

Assured by the conduct of the L'Hote Company that it woulP look to Feitel for payment and not to her, Mrs. Lichtentag did not hesitate to pay over to Feitel the amount she contracted to pay Petry under the building contract, as the installments matured up to $2000.

If the course of conduct of the L'Hote Company had been different, had it not induced Mrs. Lichtentag to believe that it looked to Feitel alone for payment, the plaintiff would then have been in a position to protect herself and avoid loss by withholding payments. Induced by the conduct of the L'Hote Company that she was not to to be regarded as its debtor and made the payments to Feitel. She cannot now be made to suffer as a result of the Company's action.

The plea of estoppel is well founded.

There being no error in the judgment appealed from, it is affirmed.

April 4, 1904.

Rehearing refused May 2, 1904.

Writ of review, etc., granted by Supreme Court, June 6, 1904.