167 So. 182

**TYLER v. WALT et al.**

No. 33453.

March 2, 1936.

Rehearing Denied March 30, 1936.

Although plaintiff was not entitled to 10 per cent. attorney's fees awarded against defendant, amendment of judgment by eliminating award of attorney's fees *held* not to require imposition of costs of appeal on plaintiff (Act No. 229 of 1910, § 2).

Fred. Zengel, Jr., and H. W. & H. M. Robinson, all of New Orleans, for Tyler.

P. M. Milner, of New Orleans, for Fidelity & Deposit Co. of Maryland.

William C. Dufour, Purnell M. Milner, and Gordon W. Goodbee, Jr., all of New Orleans, for liquidators of Hibernia Bank & Trust Co.

ROGERS, Justice.

Sterling P. Tyler sued Ernest W. Walt, the liquidators of the Hibernia Bank & Trust Company and the Fidelity & Deposit Company of Maryland, in solido, to recover certain bonds, or $7,000, the price thereof, which he alleged were intrusted by him to Walt as manager of the Holmes Store Branch of the Hibernia Bank & Trust Company, for safe-keeping in the vault of the bank, and which were converted by Walt to his own use. The suit was filed more than thirty days after plaintiff had made an unavailing written demand for the payment of his claim on the defendant liquidators and on the defendant surety company, and attorney's fees of 10 per cent. on the amount involved were also asked in the suit.

Plaintiff's demand against the defendant surety company was predicated on his claim that its bond in favor of the Hibernia Bank & Trust Company insured the fidelity of Walt and covered the bank's liability to plaintiff for the loss he had sustained through the breach of trust committed by Walt, the bank's employee.

Exceptions of no right or cause of action were filed by the liquidators of the bank and by the surety company. The exception of the liquidators was overruled, but the exception of the surety company was sustained, and as to it plaintiff's suit was dismissed.

Walt answered, denying that plaintiff's bonds were intrusted to him for safe-keeping. He admitted that he had pledged the bonds to the Hibernia Bank & Trust Company as collateral security for his personal debt, alleging that plaintiff had lent him the bonds for that purpose.

The defendant liquidators answered, denying the material allegations of plaintiff's petition, alleging specifically that the transactions between plaintiff and Walt, the bank's employee, were purely personal. The same defendants also filed a plea of estoppel on the ground that plaintiff had made no claim on defendants from August 8, 1933, when plaintiff learned that Walt had converted the bonds to his own use, until November 7, 1933, when he notified the special agent of the state bank commissioner in charge of the liquidation of the bank of the actions of Walt, and demanded the return of his bonds.

The defendant Walt filed a plea of prescription of one year, and a like plea was filed by the defendant liquidators. Both pleas were overruled.

The case was tried by the court sitting with a jury, and resulted in a verdict and judgment in favor of plaintiff against the Hibernia Bank & Trust Company, in liquidation, condemning the liquidators to deliver plaintiff the bonds claimed by him, or, in the alternative, to pay plaintiff $7,000, their value, and interest, together with 10 per cent attorney's fees.

Plaintiff appealed from the judgment so far as it failed to give him judgment in solido against the defendant Walt, and also from the judgment maintaining the exception of no right or cause of action filed by the Fidelity & Deposit Company of Maryland and dismissing the surety company from the suit.

The liquidators of the Hibernia Bank & Trust Company also appealed from the judgment.

The exception of no right or cause of action filed by the Fidelity & Deposit Company of Maryland was properly sustained by the district court.

The bond here involved is what is generally known as a "Banker's Blanket Bond." For an agreed premium the bond specifically insured the Hibernia Bank & Trust Company and several of its affiliate and subsidiary corporations against the direct loss of any money or securities, or both, "in which the Insured has a pecuniary interest, or held by the Insured as collateral, or as bailee, trustee or agent, and whether or not the Insured is liable therefor." Plaintiff was not a party to the bond, nor named therein as obligee or indemnitee, nor did he pay any consideration or premium therefor. The bond, read as a whole, negatives the idea that it was made for the benefit of any one except the designated obligees or indemnitees.

We think it would be contrary to common sense and violative of the purpose of the bond for us to include among the obligees or indemnitees a party who was neither privy to the contract nor to the consideration, and to sanction a suit by such third party against the surety company, as obligor, where no such result was intended by the contracting parties.

A case similar in principle to the one presented here was that of Salmen Brick & Lumber Company v. Le Sassier et al., 106 La. 389, 31 So. 7. There the bond was not a statutory bond executed under the provisions of Act No. 180 of 1894, but was a conventional bond containing the direct obligation of Le Sassier, the con-

tractor, and Fidelity & Deposit Company of Maryland, his surety, to Henderson, the owner, to, secure the carrying out of a building contract. There was no stipulation pour autrui contained in the bond. This court held that the bond did not bind the surety for the obligations of the contractor to the laborers and materialmen and that the latter had no right of action against the surety.

The right of a third person to sue on contracts made for his benefit is clearly defined by the statutes of the state and the jurisprudence arising out of the interpretation of those statutes. Plaintiff's action against the Fidelity & Deposit Company of Maryland is not authorized by the statutory law or by the jurisprudence of this state. Act No. 55 of 1930, amending Act No. 253 of 1918, relied on by plaintiff, affords no support for plaintiff's action. That statute applies to accidents and damages for the injuries sustained or the losses occasioned thereby; and the purpose of the act was to impose liability on the casualty insurer in case of the insolvency or bankruptcy of the insured tort-feasor.

Plaintiff's asserted cause of action against the Fidelity & Deposit Company of Maryland contravenes the rule that a promise for a valid consideration by one person to another gives no right of action to a third person who is neither privy to the contract nor to the consideration, where the contract was not made for his benefit and he was not intended to be benefited thereby.

On the theory that plaintiff's action was in tort, the defendants Walt and the liquidators of the Hibernia Bank & Trust Company pleaded that the action was prescribed by plaintiff's failure to institute it within one year from the date the alleged tort was committed. The trial judge overruled the plea on the ground that plaintiff's action was predicated on a contractual obligation and not on a tort. Defendants have apparently acquiesced in the ruling, since they have not presented in this court any argument in support of their plea. For our part, we think the ruling was correct.

The plea of estoppel filed by the liquidators of the Hibernia Bank & Trust Company was both a plea of judicial estoppel and estoppel in pais. The trial judge overruled the plea of judicial estoppel and referred the plea of estoppel in pais to the jury with the merits of the case. We assume the jury found that the plea was untenable, because they returned a verdict in favor of plaintiff, which had the effect of rejecting the plea.

We find no error in the ruling of the judge or in the action of the jury.

The plea of judicial estoppel is founded on allegations in plaintiff's petition to the effect that, after the run on the bank had started in February, 1933, plaintiff called on Walt, who was still the manager of its Holmes Store Branch, for the delivery of the bonds, which plaintiff had intrusted to him in his official capacity for safe-keeping, but that Walt gave him various dilatory excuses for his failure to do so; that on August 8, 1933, Walt called at plaintiff's home to explain his failure to deliver the bonds, and that, after Walt

left plaintiff's home, plaintiff found Walt's receipt dated August 8, 1933, the last paragraph of which reads as follows, viz.: "It is understood that I am to represent Mr. S. P. Tyler's interest in the handling of the above securities with the guarantee that within a reasonable time he will receive full value of the above," which paragraph plaintiff alleged was a pure fabrication on the part of Walt, and that at no time did plaintiff enter into any such, agreement with Walt; that on October 25, 1933, plaintiff learned that without his knowledge or consent Walt had pledged his bonds to the bank, his employer, to secure a personal loan, and that the bonds were in possession of the liquidators of the bank or the Reconstruction Finance Corporation; and that on November 7, 1933, plaintiff and his counsel called on the special agent of the state bank commissioner, in charge of the liquidation of the bank, and that at his suggestion plaintiff filed with him on November 15, 1933, a sworn statement giving the facts, together with a written demand for the return of his bonds.

It is obvious that the allegations which we have summarized were embodied in the petition for the purpose of disclosing all the facts as a matter of convenience to the parties concerned. Plaintiff's bonds were pledged by the bank to the Reconstruction Finance Company in May, 1933. Plaintiff's suit was not filed until February 26, 1934. The defendant liquidators do not pretend, nor could they successfully pretend, that they were misled to their prejudice or that they have been injured in any manner by the recitals of plaintiff's petition.

■ A person is not estopped by his judicial declarations which have neither deceived not damaged any one. Succession of Harris, 39 La.Ann. 443, 2 So. 39, 4 Am. St.Rep. 269.

■ The plea of estoppel in pais is based on plaintiff's testimony supporting the allegations of his petition and his admission that he never complained to Walt's employer, the Hibernia Bank & Trust Company, of Walt's failure to deliver him his bonds.

Since plaintiff's bonds were pledged by the bank to the Reconstruction Finance Corporation in May, 1933, it is clear that the bank was not, and could not have been, influenced in the slightest degree by anything that plaintiff did or refrained from doing after that date. Hence, for the purposes of the plea, it is not necessary to consider the nature or effect of Walt's receipt dated August 8, 1933, or of plaintiff's alleged laches in waiting from October 25, 1933, when he first learned of the pledge of his bonds to the bank, until November 7, 1933, when he complained to the liquidators of the bank and demanded the return of his bonds.

It is true that in February, 1933, plaintiff asked Walt for his bonds. But that was because plaintiff wanted to use the bonds. to purchase a house which one of his friends offered to sell him. When plaintiff asked for his bonds, explaining the purpose for which he wanted them, Walt told plaintiff that the bonds were worth

only 45 cents on the dollar, and advised plaintiff to leave the bonds with him. Plaintiff, not desiring to take a loss, abandoned his intention of purchasing a house and left the bonds with Walt. Plaintiff did not know at that time that Walt had previously pledged the bonds to the bank, his employer, to secure his personal debt. The next time plaintiff spoke to Walt about his bonds was after he learned that Walt's connection with the bank had ceased some time between May 15 and May 20, 1933, when the bank was reorganized. At that time the bank had pledged plaintiff's bonds to the Reconstruction Finance Corporation as collateral security for a loan which it had obtained from that corporation. When plaintiff spoke to Walt about his bonds after Walt's dismissal from the bank, Walt informed plaintiff that he had turned over the bonds to one of the liquidators of the bank, who was a friend of his, and Walt assured plaintiff that he would receive his bonds shortly, and in the meantime he was not to worry about them. When in November, 1933, plaintiff and his attorney called on the liquidator in question with reference to plaintiff's bonds, they learned that the bonds were in the possession of the liquidators for account of the Reconstruction Finance Corporation, to which they had been pledged in May, 1933. The bonds remained in possession of the liquidators until November, 1934, when, without notice to plaintiff, the liquidators sold them and applied the proceeds to the indebtedness due by the bank to the pledgee, Reconstruction Finance Corporation.

The facts do not support the plea of estoppel. Prior to October 25, 1933, plaintiff did not know, nor have any reason to suspect, that Walt had pledged the bonds to the bank, his employer, to secure his personal indebtedness; and prior to November 7, 1933, plaintiff did not know, nor have any reason to suspect, that the bank, in turn, had pledged the bonds to secure its indebtedness to the Reconstruction Finance Corporation. The liquidators of the bank retained possession of the bonds for one year after they had received notice of plaintiff's claim of ownership of the bonds and plaintiff's written demand for their return. During that period the liquidators apparently failed to inform the directors or managers of the Reconstruction Finance Corporation of plaintiff's claim and demand and to make any attempt to obtain from them the release of the bonds from the pledge given by the bank. Without making any investigation of plaintiff's claim of ownership, the liquidators sold the bonds and applied the proceeds of the sale to the reduction of the indebtedness due by the bank to the Reconstruction Finance Corporation.

There can be no estoppel unless there is injury to one party or advantage to the other resulting from the acts of commission or omission of the party sought to be estopped. No advantage was obtained by the plaintiff and no disadvantage was suffered by the bank by anything plaintiff did or failed to do. On the contrary, the bank was benefited by its loan from the Reconstruction Finance Corporation; and, as the proceeds were applied-

to the reduction of the loan, the bank suffered no loss by the sale of the bonds.

■ On the merits we find that the jury did not err in returning a verdict against the defendant Hibernia Bank & Trust Company, in liquidation.

The evidence shows that Walt was appointed manager of the Holmes Branch of the Hibernia Bank & Trust Company when it was opened, about March 3, 1923. On August 19, 1926, plaintiff transferred his account from the American Bank & Trust Company to the Holmes Branch of the Hibernia Bank & Trust Company. At that time plaintiff was not acquainted with Walt, and he was induced to make the transfer by a brother-in-law of Walt, who was a fellow employee of plaintiff in the service of the Fruit Dispatch Company. Plaintiff purchased his first bond in January, 1927. His other bonds were purchased in 1929, 1930, and 1931. All the bonds were purchased by plaintiff on the advice of Walt, and were made by Walt through the main office of the Hibernia Bank & Trust Company. When the bonds were received by the bank from its subsidiary Hibernia Securities Company, Inc., the bank delivered them to Walt, who, after charging plaintiff's account with the purchase price, issued to plaintiff his receipts therefor as manager of the Holmes Store Branch of the Hibernia Bank & Trust Company. Plaintiff left the bonds at the bank in possession of Walt, as branch manager, at Walt's suggestion that it was not necessary for plaintiff to rent a safety deposit box and on Walt's assurance that he would take care of the bonds

for him. When the interest on the bonds fell due, Walt would cut the coupons, collect the interest, and credit plaintiff's account therewith. The arrangement made between Walt and plaintiff for the handling of plaintiff's bonds was not unusual. It was one frequently made by the bank with its customers for their convenience.

Walt's loan account with the bank, his employer, was opened on May 20, 1925. The account exhibits a number of demand and time loans negotiated by Walt between that date and the time the bank was placed in charge of the liquidators. The loans from the beginning were secured by 629 shares of stock of the Wesson Oil Company. Later, when he was called on for additional security, Walt gave the bank a second mortgage for $5,000 on his home and a continuous guaranty for $20,000, and a note for $500, signed by his brother-in-law. In April, 1930, Walt also gave the bank plaintiff's bonds as security for his loans. In May, 1933, the Hibernia Bank & Trust Company pledged Walt's notes and the attached collateral to secure a loan from the Reconstruction Finance Corporation. The securities, including plaintiff's bonds, attached to Walt's note were sold by the liquidators in November, 1934, for account of the Reconstruction Finance Corporation. At that time Walt's indebtedness under his loans amounted in principal to $20,407.41 and in accrued interest to $2564.58, or a total indebtedness of $22,971.99. The liquidators realized $23,123.27 from the sale of the securities. An additional charge of $151.28 as an attorney's

fee absorbed the difference between the amount of Walt's indebtedness and the amount realized from the sale of the securities pledged to secure the indebtedness.

The defendants have utterly failed to sustain their defense that plaintiff lent his bonds to Walt for the purpose of pledging them to secure the latter's indebtedness to the bank. Walt, who testified in the case, did not show nor claim that he had any written authority from plaintiff to make the pledge. His testimony is that plaintiff orally granted him such authority. The testimony is improbable on its face. The friendly relations which the record shows existed between plaintiff and Walt do not exhibit sufficient motive for plaintiff's alleged agreement to permit Walt to pledge plaintiff's bonds to secure Walt's personal debt. The bonds constituted plaintiff's entire fortune. Plaintiff, who was a banana inspector in the employ of the Fruit Dispatch Company, purchased the bonds from the proceeds of a $5,000 judgment which he obtained against a railroad company for the loss of an arm and from a small inheritance which fell to him. The alleged transaction is wholly contrary to common experience and common sense. Nothing but the most unequivocal testimony could persuade a court that plaintiff entered into an agreement with Walt calling for such a remarkable exhibition of confidence and generosity on plaintiff's part. But Walt's testimony is uncorroborated and is so self-contradictory and inconsistent that it must be rejected as unworthy of belief. Besides, it is flatly con-

tradicted by the testimony of plaintiff himself. Walt never informed plaintiff that he had pledged the bonds to the bank. Plaintiff obtained that information in the latter part of October, 1933, from the attorney whom he had consulted in the early part of the month. The information was given by Walt to plaintiff's attorney when he called at the latter's office on October 25, 1933. Walt at that time also advised plaintiff's attorney that the bonds were in the possession of the liquidators of the bank or of the Reconstruction Finance Corporation and that he was unable to deliver them to plaintiff.

Defendants make much of Walt's purported receipt dated August 8, 1933. The evidence shows that on the night of August 8, 1933, Walt and his wife paid a social visit to plaintiff's home. There were present at the time, in addition to Walt, his wife and plaintiff, plaintiff's wife, and her father and mother. The next morning plaintiff's wife found on the refrigerator in the kitchen, which was in the center of the house, an envelope containing the so-called receipt for plaintiff's bonds and another so-called receipt for $2,000 of bonds belonging to plaintiff's father-in-law, which Walt had also pledged to the bank as collateral security for his debt. At that time the bonds had not only been pledged by Walt to the bank for his indebtedness, but they had been pledged also by the bank to the Reconstruction Finance Corporation to secure the bank's indebtedness. The so-called receipts were plainly signed and left at plaintiff's home by Walt in an attempt to mend his hold

and to quiet any misgivings plaintiff might feel as well as to forestall any investigation plaintiff might be inclined to make regarding his bonds. However, as soon as plaintiff was able to do so, he got into communication with Walt, repudiated the so-called receipt, and demanded the return of his bonds. But Walt was able to quiet plaintiff's fears for the time being by declaring that the bonds were in the possession of one of the liquidators, a former vice president of the bank, who was a friend of his and by promising that plaintiff would shortly receive his bonds. Thereafter plaintiff saw Walt several times in regard to his bonds without avail. Finally, on the advice of one of his friends, plaintiff in October, 1933, consulted an attorney, with the result we have hereinabove set forth.

In the early part of November, 1933, plaintiff and his attorney called on the liquidator to whom Walt had referred, and explained that plaintiff's bonds then in possession of the liquidators had been embezzled by Walt and wrongfully pledged by him to the Hibernia Bank & Trust Company. The liquidator suggested that plaintiff make affidavit of the facts and file the affidavit with him. Plaintiff made the affidavit as suggested, setting out the facts in detail. He also prepared a formal written demand for the return of his bonds. On November 15, 1933, plaintiff filed his affidavit and written demand with the liquidators. But plaintiff heard nothing further in regard to his bonds, and on February 26, 1934, he filed this suit. Thereafter, namely, in November, 1934, the defendant liquidators, without investigating plaintiff's claim of ownership and without notice to plaintiff, sold plaintiff's bonds in satisfaction of the bank's pledge thereof to the Reconstruction Finance Corporation.

It is useless to comment further upon the evidence. We have studied it with great care and think that it fully establishes the liability sought to be imposed by plaintiff on the defendant liquidators.

■ But the judgment entered on the verdict of the jury against the defendant liquidators is erroneous so far as it condemns them to pay 10 per cent. attorney's fees. We know of no provision of the law, and have been referred to none, which authorizes the court to award attorney's fees in a case of this character.

Taking up plaintiff's appeal from the rejection of his claim against the defendant Walt, we find that Walt apparently is not contesting plaintiff's demand that he be condemned in solido with the defendant liquidators. Walt's sole defense is that plaintiff lent him his bonds for the purpose of pledging them to the bank. As we have hereinabove shown, the defense is not well founded. Walt wrongfully converted the bonds to his own use, and is liable to plaintiff for his wrongful act.

■ Agents are not liable to third persons for nonfeasance or mere omissions of duty. They are responsible to such parties only for the actual commission of those positive wrongs, for which they would be otherwise accountable in their individual capacity, under the obligations common to all other men. The doctrine

under the common law and civil law does not differ on that subject. Delaney v. Rochereau, 34 La.Ann. 1123, 44 Am.Rep. 456; Cline v. Crescent City R. Co., 41 La. Ann. 1031, 1038, 6 So. 851.

█ Although the judgment against the defendant liquidators will have to be amended with respect to the award of attorney's fees, we do not think that the amendment should carry the costs of appeal. Under the circumstances, the defendants should bear all the costs of suit. Act No. 229 of 1910, § 2.

For the reasons assigned, the judgment appealed from is annulled so far as it condemns the defendant Hibernia Bank & Trust Company, in liquidation, for 10 per cent. attorney's fees. The judgment is amended so as to condemn the defendant Ernest W. Walt in solido with the defendant Hibernia Bank & Trust Company, in liquidation, to deliver to the plaintiff, Sterling Price Tyler, the bonds and coupons described in the judgment, or, in the alternative, to pay plaintiff the amount of the principal and interest of the bonds. The defendants E. W. Walt and Hibernia Bank & Trust Company, in liquidation, are decreed to be solidarily liable for the costs of suit. In all other respects the judgment appealed from is affirmed.