230 So.2d 287 (1970)
VICTORY ELECTRIC WORKS, INC. and Thomas Ward
v.
MARYLAND CASUALTY COMPANY et al.
No. 3346.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1970.
Rehearing Denied February 2, 1970.
Writ Refused April 3, 1970.
*288 Henican, James & Cleveland, Murray F. Cleveland and Carl W. Cleveland, New Orleans, for plaintiffs-appellants.
Loeb, Dillon & Livaudais, Marcel Livaudais, Jr., New Orleans, for Maryland Casualty Co., defendant-appellee.
Phelps, Dunbar, Marks, Claverie & Sims, Louis B. Claverie and Jack M. Gordon, New Orleans, for The Hibernia National Bank in New Orleans, defendant-appellee.
Before SAMUEL, REDMANN, and DOMENGEAUX, JJ.
REDMANN, Judge.
Plaintiff appeals from the rejection of the bulk of its claim against the Hibernia National Bank and the bank's blanket bond underwriter resulting from the bank's charging against plaintiff's checking account some $330,000 of forged payroll checks and about $12,000 of genuine checks with forged indorsements.
The trial court awarded judgment in plaintiff's favor against the bank in the amount of the checks charged during the month immediately prior to plaintiff's discovery and notification to the bank of the forgeries, and against the forger for the entire amount. Neither of these defendants appealed or answered the appeal.
The issues on appeal include the constitutionality and effect of LSA-R.S. 6:53, a peremption statute governing suits to enforce the bank's liability; and the status of its bond underwriter, which plaintiff claims under R.S. 22:6(8) is the bank's surety, unable to assert any defense personal to the principal debtor, LSA-C.C. art. 3060. Plaintiff argues the defense of R.S. 6:53 is personal to banks.
The forger was plaintiff's payroll clerk who prepared certain payroll checks, but had no authority to sign the checks. Over some three and a half years he sometimes added checks to those being presented to a corporate officer for signature, and much more often he personally forged a corporate officer's signature. He used the names of former employees, or employees being paid through a different payroll, as payees, indorsed the checks with the payees' names, and cashed them at the defendant drawee bank.

Suit Against the Bank
LSA-R.S. 6:53 provides, in part,
"Suits to enforce the liability of any bank which has paid and charged to the account of a depositor any money on a forged or raised check or on a check made payable to a fictitious person and issued in the name of the depositor may be brought * * * only within one year after the return to the depositor of the voucher representing the payment, and then, only if the depositor, upon the return by the bank, has notified it that the check paid is forged or raised or was payable to a fictitious person."
Plaintiff argues unconstitutionality of the source of R.S. 6:53, La.Acts 1934, No. 163, enacted as Senate Bill No. 33, for lack of reading on three separate days in each House of the Legislature, La.Const. art. 3, *289 § 24. This argument is factually erroneous; see Senate and House Calendars and Journals of 1934. On the effect of incorporation into the Revised Statutes of 1950 if the source law were defectively enacted, see State v. Rones, 223 La. 839, 67 So.2d 99, 103-104 (1953).
The language of R.S. 6:53 broadly denies enforcement of "the liability" of a bank which charges a forged check against a depositor's account. Ordinarily no liability of the bank is created by or arises from the charging of a forged check against a depositor's account (except perhaps, e. g., for damages for embarrassment or worse because a later valid check is returned NSF). "The liability" is ordinarily a contractual liability or debt, since the deposit of funds results in a creditor-debtor relationship, see Matthews, Finley & Co. v. Their Creditors, 10 La.Ann. 342 (1855). Plaintiff here advances also a well articulated tort theory of the bank's liability. Yet whatever the theoretical basis of "the liability", R.S. 6:53 renders it unenforceable from the time the bank's having paid forged checks becomes knowable to the depositor upon return of the cancelled checks, unless thereupon the depositor notify the bank.
Plaintiff did not detect and did not notify the bank of the forgeries "upon the return" of the cancelled checks, which were returned to plaintiff regularly each month. Thus, although plaintiff argues a tort theory of liability which was not urged in Wm. M. Barret, Inc. v. First Nat. Bank of Shreveport, 191 La. 945, 186 So. 741 (1939), we believe our Supreme Court's denial of recovery there, on facts similar to this case, requires us to deny recovery to plaintiff irrespective of plaintiff's theory of "the liability" of the bank, insofar as the charging of the forged checks is concerned.
Plaintiff argues the maxim contra non valentem agere nulla currit praescriptio prevents the application of R.S. 6:53, claiming it was unable to bring the action earlier because kept in ignorance by the bank's fault, especially in failing to require the employee-thief's indorsement of the checks cashed. But indorsement is not required of an instrument payable to bearer, R.S. 7:30, which these checks purported to be since indorsed in blank, R.S. 7:9(5). Even so, plaintiff was not prevented from having its authorized signers examine its cancelled checks, as recommended by its auditors but never done. We believe the contra non maxim inapplicable.
In addition to forged checks, however, there are some checks with a genuine authorized signature of plaintiff, payable to then or former employees of plaintiff, on which the indorsement of the payee's signature was forged by the employee-thief who had supplied the payees' names. These are not checks payable to a "fictitious person" governed by R.S. 6:53, see Barret, supra, at 186 So. 746. But such a check is bearer paper under LSA-R.S. 7:9(3), because "payable to the order of a * * * living person not intended to have any interest in it, and such fact was known to the person making it so payable, or known to his employee * * * who supplies the name of such payee"; and the bank is not liable for having cashed them; Fidelity & Cas. Co. of New York v. United States F. & G. Co., 81 So.2d 576 (La.App.1955), cert. denied. In that case the drawee bank was the payee, yet cashed the checks on presentation by the employee-thief. Although the question of by whom the living payee must be "not intended to have an interest" was not discussed, it was presumably true there as here that the name-supplier did not, but the signer did, intend the payee to have an interest. (There may be some doubt, since the mere fact that the drawee bank there would treat checks payable to itself as bearer checks suggests the drawer may have usually made checks for encashment payable to the drawee bank, in which case the signer also would not have intended the payee to have an interest.)
*290 The bank is not liable on the genuine checks because they are bearer paper; and its liability on the forged checks cannot be enforced.

Suit on the Bond
LSA-R.S. 22:6(8) provides that the obligations of an insurer underwriting blanket bonds "shall be known and treated as suretyship obligations". Plaintiff argues that the underwriter becomes the surety of the bank on its obligation towards plaintiff, suable in the same suit with the bank, LSA-C.C. art. 3051, and not entitled to the benefit of R.S. 6:53's denial of enforcement of "the liability of any bank".
Tyler v. Walt, 184 La. 659, 167 So. 182 (1936), was decided prior to La.Acts 1948, No. 195, sec. 1.06(8), the source of the quoted language of R.S. 22:6(8). But Tyler's reasoning is unaffected by the statutory language, and obliges us to reject plaintiff's argument that the underwriter's obligation as surety is in favor of plaintiff. The Supreme Court there pointed out that the bond insures the bank against covered losses, and does not purport to be made for the benefit of any third person. Our reading of the bond here brings us to the same conclusion (with the irrelevant exception of customers losing property in their own possession during, e. g., a robbery in the bank).
The underwriter is the surety of any employee who might become obliged towards the bank to refund embezzled funds; it is the surety of a forger who becomes obliged towards the bank to restore the bank's money paid out on the forged signature. The underwriter's promise is to hold the bank harmless: in suretyship terms, the underwriter agrees with the bank to satisfy the restitution obligation of the embezzler (or forger), if the embezzler (or forger) does not; see LSA-C.C. art. 3035.
But the underwriter did not agree to become the surety or guarantor of the bank's obligation to return its customers' deposits (or pay them on the customers' orders only).
Nor does the bond made the underwriter the bank's tort liability insurer.
The judgment dismissing plaintiff's suit against the underwriter is therefore likewise correct.
The judgment appealed from is affirmed.
Affirmed.