TAYLOR, Judge.
This is a suit for damages arising out of the alleged negligence of the defendant in *247 cashing certain checks written on the accounts of plaintiff, Eagle Mortgage Corporation. Certain Underwriters at Lloyd’s, co-plaintiff in this case, reimbursed Eagle Mortgage Corporation for a portion of the loss and became partially subrogated to Eagle’s claim. The case was submitted to the trial court on a stipulation of fact and on discovery depositions. No testimony was elicited at the time of the trial. From a judgment rendered in favor of defendant, plaintiffs have appealed to this court.
Eagle Mortgage Corporation, hereinafter referred to as Eagle, maintained four separate checking accounts with defendant, hereinafter referred to as the Bank, during the period of October, 1965 through June, 1966. During this same time period Eagle had in its employ a certain Mrs. Yvonne W. Ryan, who serve as Treasurer of the corporation. As Treasurer, Mrs. Ryan had extremely broad authority in handling the financial affairs of the corporation. Among her duties in this office was the preparation of checks drawn on all four accounts which Eagle maintained with the Bank.
Between the months of October, 1965 and June, 1966 Mrs. Ryan systematically drew checks on three of these checking accounts, at what appears to be weekly intervals, and appropriated the funds to her own purposes. It has been stipulated that all checks bore the proper makers’ signatures for their issuance. It is further stipulated that the Bank returned all checks to Eagle which had been drawn on its accounts, including the checks involved in this law suit, at least once a month. Eagle did not notify the Bank upon receipt of the monthly statement that anything was amiss with regard to its accounts. More particularly, Eagle did not inform the Bank that certain of these checks bore an improper endorsement, which is the argument urged before this court. It was not until June 7, 1966 that Eagle began to suspect something was wrong after Mr. Louis M. Jones, the President of Eagle, spoke with their auditor. Eagle did not notify the Bank until June 16th after Mrs. Ryan allegedly admitted to Mr. Jones that she appropriated the funds involved.
The facts in the case at bar seem not to be in dispute. But rather we are called upon to determine a question of law only. All but one of the checks in question were made payable to the order of “Ourselves” or “Eagle Mortgage Corporation”. It was the testimony of Mr. Jones that Eagle made checks so payable when the corporation wished to transfer funds from one of its several accounts to another. Mrs. Ryan supplied the name of the payee to the checks, signed the checks herself, and then presented the checks to another officer, authorized by' resolution of the Board of Directors of Eagle to draw checks on these accounts, for a second required signature. Mrs. Ryan then brought these checks to a branch office of the Bank where she endorsed these instruments on the back either
“Eagle Mortgage Corporation Yvonne W. Ryan, Tres.” or “Yvonne W. Ryan, Tres.”
and received cash from "the Bank.
The Bank argues that these checks constituted bearer paper and as such no endorsement was required in order to negotiate or cash them. Eagle on the other hand argues that the checks were order paper and that the endorsements on the back were insufficient to warrant payment of funds. Eagle argues that the signatures of two of four specifically designated corporate officers were needed pursuant to the terms of the following resolution on file with the Bank before the Bank could cash checks drawn on Eagle’s accounts:
“RESOLVED, That the President, Any Vice-President, Secretary, and Treasurer of this Corporation, or any two of them be hereby authorised to sign checks in the name of this Corporation, drawn on the National American Bank of New Orleans, including checks payable to the order, for whatever *248 purpose, of the officer and officers signing same; that a certified copy of this resolution be sent to said Bank; and said Bank is hereby authorized to honor checks of .this Corporation when so signed by said officers unless and until it be expressly notified to the contrary by this Corporation, and said Bank shall at all times be protected in recognizing as such officers the persons named in a certificate signed by the Secretary of this Corporation, over the Corporate seal, until and unless it be so notified that said officers have been changed.” (Emphasis added)
We are of the opinion that all of the checks in question made payable to “Ourselves” or “Eagle Mortgage Corporation” constituted bearer paper and as such needed no endorsement as a condition precedent to their being legally cashed. LSA-R.S. 7:9 provides in part as follows:
“The instrument is payable to bearer:
(3) When it is payable to the order of a fictitious or non-existing or living person not intended to have any interest in it, and such fact was known to the person making it so payable, or known to his employee or other agent who supplies the name of such payee.”
It is stipulated that Mrs. Ryan was an employee of Eagle at the time the checks were drawn and that it was she who supplied the name of the payee in each instance. Therefore since Mrs. Ryan intended that “Ourselves”, meaning Eagle Mortgage Corporation, have no interest in the instrument at the time she made it so payable, the instrument is bearer paper.
Despite the plaintiffs’ protestation to the contrary, there can be no reasonable finding other than that Mrs. Ryan intended to embezzle the funds involved at the time she prepared the checks. Hers was a systematic theft of funds on an almost weekly basis over a seven month period. It was a well planned scheme and we cannot believe her intent was other than to appropriate funds to herself from the outset and that Eagle was to have no interest in this money.
It was the testimony of Mr. Louis Jones that, as a matter of office policy, “ * * * my signature had to appear on all pay roll checks and that no checks were to be made out to cash or to bearer or the individuals of the corporation that did not have my signature on them.” Mrs. Ryan was aware of this directive and specifically disobeyed it when she cashed the checks in question. The only logical inference we can make from her activities is that she intended to appropriate these funds at the time the check was made. She knew she could not get Mr. Jones’ approval of checks made payable to cash and not account for the money whereas she did not need his approval to transfer funds from one account to another. Accordingly, these checks can only be bearer paper. Victory Electric Works, Inc. v. Maryland Cas. Co., La.App., 230 So.2d 287 (1970). As such the Bank was justified in cashing the checks and plaintiffs have no recourse against the Bank for so doing.
The remaining instrument involved in this litigation, check number 1001 dated December 3, 1965, was made payable to the order of “Y. Ryan” and endorsed by Mrs. Ryan simply “Y. Ryan”. This instrument was properly made pursuant to the emphasized portion of the above-quoted resolution in that it was made payable to a corporate officer and signed by the same corporate officer. However it was made in contravention of Mr. Jones’ office directive that he was to sign all checks made payable to corporate employees. We find no fault on the part of the Bank in cashing this check as the check was properly made by two authorized signators and endorsed by the payee.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this proceeding are to be borne by appellant.
Affirmed.