SARTAIN, Judge.
The plaintiff, Louisiana and Southern Life Insurance Company, appeals from a judgment of the district court which dismissed its suit insofar as it pertained to Fidelity and Deposit Company of Maryland following the latter’s exception of no right of action. Plaintiff alternatively contends that the trial judge also erred in failing to permit it to amend its petition so as to set forth a cause of action under the theory of unjust enrichment. We affirm in part.
Louisiana and Southern had previously issued a policy of health and accident insurance to New Orleans Steamship Association, International Longshoremen’s Association, AFL-CIO Welfare Plan (Welfare Plan), to be administered by designated Trustees, covering members of the union and their dependents.
Under this self-administered plan it developed that numerous payments were made on fraudulent and fictitious claims. As a result of numerous acts of fraud various employees of the Association, Trustees of the Plan, and other third parties were indicted and convicted of sundry federal offenses. A number of these convicted persons were ordered to make restitution. All funds thus collected by the Clerk of the Federal District Court were forwarded to the Welfare Plan.
In its initial and first supplemental and amending petitions, Louisiana and Southern named the following defendants: the Welfare Plan, its Trustees, and Underwriters of Lloyd’s, London, as the liability insurer of designated Trustees and fiduciaries of the Welfare Plan.
The present controversy arose as a result of Louisiana and Southern’s second supplemental and amending petition against Fi *596 delity and Deposit. The petition alleges, inter alia, that Fidelity and Deposit had issued a commercial blanket bond in favor of the Welfare Fund, “covering the fraudulent and dishonest acts of the employees, trustees, and fiduciaries of the Trust,” and that Fidelity and Deposit is liable to plaintiff “as a third party beneficiary of the bond” for the dishonest acts of the employees of the Welfare Fund. It is undisputed that the only insured named in the blanket bond is the Welfare Fund.
The bond in pertinent part provides:
“The Underwriter, in consideration of the payment of the premium, and subject to the Declarations made a part hereof, the General Agreements, Conditions and Limitations, and other terms of this Bond, agrees to indemnify the Insured against any loss of money or other property which the Insured shall sustain through any fraudulent or dishonest acts committed by any of the employees, acting alone or in collusion with others, to an amount not exceeding in the aggregate the amount stated in Item 3 of the Declarations.”
R.S. 22:6 of the Louisiana Insurance Code defines and classifies the various types of insurance that are permitted in the state. Subsection 8, thereof, relates to fidelity and surety bonds and in particular to blanket bonds of the type issued herein by Fidelity and Deposit. The last sentence of the section states: “Such obligations shall be known and treated as suretyship obligations and such business shall be known as surety business.” R.S. 22:6(8). (Emphasis ours.)
C.C. art. 3035 defines suretyship as “an accessory promise by which a person binds himself for another already bound and agrees with the creditor to satisfy the obligation, if the debtor does not.” “Surety-ship can not be presumed; it ought to be expressed, and is to be restrained within the limits intended by the contract.” C.C. art. 3039.
Notwithstanding the fact that the obligation of the surety under a blanket bond is contingent upon a delictual act (theft, etc.) of an employee of the insured, the courts have consistently refused to extend rights to a third person not a party to the contract. In Tyler v. Walt, 184 La. 659, 167 So. 182, 183 (1936) the court stated:
“The bond here involved is what is generally known as a ‘Banker’s Blanket Bond.’ For an agreed premium the bond specifically insured the Hibernia Bank & Trust Company and several of its affiliate and subsidiary corporations against the direct loss of any money or securities, or both, ‘in which the Insured has a pecuniary interest, or held by the Insured as collateral, or as bailee, trustee or agent, and whether or not the Insured is liable therefor.’ Plaintiff was not a party to the bond, nor named therein as obligee or indemnitee, nor did he pay any consideration or premium therefor. The bond, read as a whole, negatives the idea that it was made for the benefit of any one except the designated obligees or indem-nitees.
“We think it would be contrary to common sense and violative of the purpose of the bond for us to include among the obligees or indemnitees a party who was neither privy to the contract nor to the consideration, and to sanction a suit by such third party against the surety company, as obligor, where no such result was intended by the contracting parties.”
In Victory Electric Works, Inc. v. Maryland Cas. Co., 230 So.2d 287 (La.App. 4th Cir. 1970), writ refused April 3,1970, recovery was sought against the bank and the underwriter of its blanket bond for charges against a depositor’s account based on forged signatures and checks to fictitious payees. The bank was released on other grounds, but as to the right of the depositor vis a vis the obligation of the underwriter, this court said:
“Tyler v. Walt, 184 La. 659, 167 So. 182 (1936), was decided prior to La.Acts 1948, No. 195, sec. 1.06(8), the source of the quoted language of R.S. 22:6(8). But Tyler’s reasoning is unaffected by the statutory language, and obliges us to reject plaintiff’s argument that the underwriter’s obligation as surety is in favor of plaintiff. The Supreme Court there *597 pointed out that the bond insures the bank against covered losses, and does not purport to be made for the benefit of any third person. Our reading of the bond here brings us to the same conclusion (with the irrelevant exception of customers losing property in their own possession during, e. g., a robbery in the bank). “The underwriter is the surety of any employee who might become obliged towards the bank to refund embezzled funds; it is the surety of a forger who becomes obliged towards the bank to restore the bank’s money paid out on the forged signature. The underwriter’s promise is to hold the bank harmless: in suretyship terms, the underwriter agrees with the bank to satisfy the restitution obligation of the embezzler (or forger), if the embezzler (or forger) does not; see LSA-C.C. art. 3035.
“But the underwriter did not agree to become the surety or guarantor of the bank’s obligation to return its customers’ deposits (or pay them on the customers’ orders only).
“Nor does the bond make the underwriter the bank’s tort liability insurer.” 230 So.2d 287, 290.
While the distinction between a blanket bond and the typical liability policy may appear to be an overly technical one as they relate to third parties not privy to the contract, there is, in our opinion, some justification for the distinction. The blanket bond does not contain the usual language that is found in the typical liability policy, namely, the obligation to defend the insured, the omnibus clause, or any language extending third party rights. However, the most significant reason for the distinction is that created by the legislature itself in its declaration that such contracts are to be treated as “suretyship obligations”.
Louisiana and Southern doesn’t claim rights under suretyship but urges that it is entitled to benefits under the bond as third party beneficiary under the provisions of C.C. art. 1890. The article, in part, provides:
“A person may also, in his own name, make some advantage of a third person the condition or consideration of a commutative contract, or onerous donation;

A stipulation pour autrui requires intent on the part of the party creating the benefit. Where that party is not privy to the contract such intent may be determined from the factual relationship of the parties. Smith, Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui, 11 Tul.L. Rev. 18 (1936); Allen & Currey Mfg. Co. v. Shreveport Waterworks Co., 113 La. 1091, 37 So. 980 (1905).
In the instant matter the bond, under which plaintiff claims a beneficiary right, was issued to the Welfare Fund in 1963. The initial policy of health and accident insurance issued by Louisiana and Southern was not written until 1966, some three years later. It can hardly be said that under these circumstances a stipulation pour autrui was intended.
Lastly, plaintiff contends that the trial judge erred in his refusal to permit it to amend its petition so as state a cause of action for unjust enrichment.
C.C.P. art. 934 provides:
“When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed.” (Emphasis ours.)
As a general rule the “shall” in the above article requires that the adverse party be given an opportunity to amend where there is a conceivable possibility that cause or right of action may be stated. Hodges v. LaSalle Parish Police Jury, 368 So.2d 1117 (La.App. 3rd Cir. 1979). However, the right to amend is not so absolute as to permit the same when such amendment would constitute a vain and useless act. Perkins v. Desrochers, 359 So.2d 323 (La.App. 4th Cir. 1978).
Louisiana and Southern contends that it is equitably wrong for the Welfare Fund to *598 transmit the funds it is receiving as restitution from the convicted parties to Fidelity and Deposit and that given the opportunity to amend it could state a cause of action against Fidelity and Deposit on the basis of unjust enrichment.
On the other hand, Fidelity and Deposit states that the monies it is receiving from the Welfare Fund are under subrogation rights granted to it following payments it made to the Welfare Fund under the bond.
The five requisites for an action for unjust enrichment are (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the resulting impoverishment, (4) an absence of “justification” or “cause” for the enrichment or impoverishment, and (5) the absence of any other remedy at law. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (La.1967).
We need only to reject Louisiana and Southern’s request based on the absence of (1) above, namely, the averred enrichment of Fidelity and Deposit. Fidelity and Deposit is not being enriched in the sense that they are receiving funds to which they are not entitled. In essence, Louisiana .and Southern is objecting to any distribution of the restitution funds until “an equitable distribution” thereto can be determined. This is an effort to do indirectly that which cannot be done directly. The trial judge so found and we agree.
An insurer from whom money was stolen by fraudulent claims under a group policy (but who did not recover the stolen amounts by premium adjustments) has a cause of action against the thieves and anyone vicariously liable for their acts. It may therefore be that plaintiff insurer has a cause of action against the Welfare Plan (for its employees’ thefts from plaintiff in the course and scope of their employment). And that may mean that the Welfare Plan (once made liable for its employees’ thefts from another) could have a cause of action against its thieving employees and their “surety” on the Indemnity Bond (who is defendant here). But it does not mean that the insurer has a cause of action against the surety.
Moreover, that either the thieves or the Welfare Plan should pay the wrong party (the surety) may create a cause of action against their erroneous payee for restitution, but the only person who has the requisite interest to institute suit for restitution—the only person with a right of action, C.C.P. 927(5)—is the person “from whom [the erroneous payee] has unduly received it.” C.C. 2301. Ordinarily, a payment by a debtor to the wrong person does not impoverish the creditor at all because the creditor’s credit is not in any way diminished by the debtor’s mistaken payment.
One might conceive circumstances such as a preferential payment by an insolvent that could produce some cause of action in plaintiff’s favor or give plaintiff the right to exercise the Welfare Plan’s or its employees’ cause of action. But plaintiff makes no suggestion that it desires to make such an amendment to its petition.
For the above reasons, the judgment of the trial court sustaining the exception of no right of action and denying Fidelity and Deposit’s request to amend is affirmed.
All costs relating to this appeal are assessed against Louisiana and Southern. All other costs are to await a final determination on the merits.

AFFIRMED.