**NORTH AMERICAN SPECIALTY INSURANCE COMPANY**

v.

**GEORGIA GULF CORPORATION and Iberville Coatings, Inc.**

No. CIV. A. 99–859.

United States District Court, M.D. Louisiana.

April 18, 2000.

Dominic J. Ovella, Danny Neil Bowz, W. Evan Plauche', Joseph L. Spilman, III, Hailey, McNamara, Hall, Larmann & Papale, Metairie, LA, for North American Specialty Insurance Company, plaintiffs.

Richard Franklin Zimmerman, Jr., Randal J. Robert, Kantrow, Spaht, Weaver & Blitzer, Baton Rouge, LA, for Iberville Coatings, Inc.

Emile C. Rolfs, III, Luis Arturo Leitzelar, Breazeale, Sachse & Wilson, Baton Rouge, LA, for Georgia Gulf Corp, defendants.

## RULING ON MOTIONS

JOHN V. PARKER, District Judge.

This matter is before the court on Georgia Gulf Corporation's ("Georgia Gulf") motion to dismiss and North American Specialty Insurance Company's ("NAS") motion for summary judgment. Both motions are opposed. There is no need for oral argument. Jurisdiction is based upon 28 U.S.C. § 1332.

On February 1, 2000, United States Magistrate Judge Christine A. Noland issued a report and recommendation (doc. 9) in which she recommended that Georgia Gulf's motion to dismiss be denied and that NAS's motion for summary judgment be granted. Georgia Gulf and Iberville Coatings, Inc. have filed objections to the report. For the following reasons, the court rejects the magistrate's report and rules accordingly.

On matters referred to the magistrate judge under 28 U.S.C. § 636(b), the district court makes a de novo determination of those parts of the magistrate's report, findings, or recommendations to which a timely objection is made. 28 U.S.C. § 636(b)(1); *Garcia v. Boldin,* 691 F.2d 1172, 1179 (5th Cir.1982). The requirement that the district judge make a "de novo" determination is satisfied by consideration of the record as developed before the magistrate judge without holding a de novo hearing. The district court may accept, reject, or modify in whole or in part, the magistrate's findings or recommendations. *Id.*

## Facts

This declaratory judgment action [1] by NAS is directed toward numerous state court claims, a majority which have been consolidated and removed to this court. All rise from a mass toxic exposure incident. NAS seeks a declaration that the commercial general liability insurance ("CGL") policy in effect with defendant Iberville Coatings does not provide coverage for an incident that occurred at the Georgia Gulf plant in Plaquemine, Louisiana.

Georgia Gulf is a Delaware corporation with its principal place of business in Atlanta, Georgia. Georgia Gulf operates a plant in Plaquemine. In August of 1995, Georgia Gulf contracted with the Harmony Corporation to provide all labor, materials and equipment necessary to construct the VCM expansion at the plant in Plaquemine. On September 11, 1996, the Harmony Corporation entered into a subcontract with Iberville Coatings to provide "field touch-up painting" in connection with the VCM expansion. The subcontract includes an indemnity clause running in favor of Harmony Corporation and Georgia Gulf.

On or about December 10, 1996, a multi-plaintiff lawsuit was filed in the Eighteenth Judicial District Court, Parish of Iberville, Louisiana. The plaintiffs sought damages for alleged personal injuries sustained as a result of exposure to certain mustard gas agents occurring on or about September 25, 1996 while on the premises

---

1. This action was originally filed in the United States District Court for the Eastern District of Louisiana. The action was transferred to the Middle District in October of 1999.

of Georgia Gulf's plant in Plaquemine. Among the plaintiffs were certain employees of Iberville Coatings who were working at the Georgia Gulf facility at the time of the alleged exposure. The plaintiffs sued various defendants, including Georgia Gulf.

Subsequently, Georgia Gulf made a demand upon Iberville Coatings pursuant to the indemnity clause contained in the subcontract. Georgia Gulf contended that it was entitled to indemnity and a defense of those claims asserted by employees of Iberville Coatings in the underlying litigation. In response to Georgia Gulf's demand, Iberville Coatings made formal demand upon NAS, its insurer at the time of the incidents giving rise to the underlying claim, seeking coverage and a defense under the terms and provisions of the policy of insurance. NAS denied coverage and filed the instant declaratory judgment action naming Iberville Coatings and Georgia Gulf as defendants.

In response, Georgia Gulf filed a motion to dismiss on the basis that no controversy exists between NAS and Georgia Gulf. In turn, NAS filed a motion for summary judgment based upon a "Total Pollution Exclusion" in its CGL policy of insurance issued to Iberville Coatings. These motions are now before the court.

### Georgia Gulf's Motion to Dismiss

When considering a Motion to Dismiss for failure to state a claim, the court accepts as true all well-pleaded allegations in the complaint, and views them in the light most favorable to the plaintiff. *Malina v. Gonzales,* 994 F.2d 1121, 1125 (5th Cir. 1993). Such motions should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80

(1957); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir. 1994).

In its motion to dismiss, Georgia Gulf argues that NAS lacks standing to bring this action against Georgia Gulf under the Declaratory Judgment Act, 28 U.S.C. § 2201. Specifically, Georgia Gulf, which is not a named insured under NAS's policy of insurance issued to Iberville Coatings, asserts that it may not bring a direct action against NAS on its contractual indemnity claim against NAS's insured, Iberville Coatings.[2]

■ Under Louisiana's Direct Action Statute, a liability insurer may be sued directly by an injured third party. However, the "injured party" accorded a right of direct action is a "person injured as a result of tortuous conduct and not one injured as a result of breach of contract." *Pennsylvania Fire Ins. Co. v. Underwriters at Lloyd's,* 140 So.2d 212, 215 (La.App. 4 Cir.1962). This result is in accordance with the statement of the Louisiana Supreme Court in *Tyler v. Walt,* 184 La. 659, 167 So. 182, 184 (1936) in which the Court said with reference to the purpose of the statute: "That statute applies to accidents and damages for the injuries sustained or the losses occasioned thereby; and the purpose of the act is to impose liability on the casualty insurer in case of the insolvency or bankruptcy of the insured tortfeasor."

■ In the present case, the relationship between Iberville Coatings and Georgia Gulf arises out of contract. Specifically, Iberville Coatings provided labor to the Harmony Corporation to perform work at Georgia Gulf's Plaquemine facility pursuant to two subcontracts between Iberville Coatings and Harmony. Paragraph 19 provides that Iberville Coatings will indemnify Georgia Gulf and hold it harmless

**2.** According to the subcontracts between Harmony Corporation and Iberville Coatings, Iberville Coatings was not required to name Georgia Gulf as an additional insured in its

CGL policy with NAS. Additionally, NAS has not made the assertion that Georgia Gulf is an additional insured in its CGL policy issued to Iberville Coatings.

from claims arising out of injuries to any person "in any way connected with" the performance of the subcontracts. The subcontracts specify that Iberville Coatings will indemnify Georgia Gulf for such claims, "regardless of whether or not such losses, damages, liabilities, costs, or expenses shall be incident to or arise out of conditions permitted or acts performed by an Indemnitee [Harmony or Georgia Gulf]; whether or not any such injury, death, or damage may have been caused or alleged to have been caused by the negligence (whether classified as active, passive, or otherwise) of the Indemnitees, or the conditions of the premises, or otherwise."

In its counterclaim against Iberville Coatings, Georgia Gulf asserts two causes of action: contractual indemnity and breach of contract based upon the terms of the subcontracts. Since Georgia Gulf has no "tort" claim against Iberville Coatings, the court finds that there is no actual controversy between NAS and Georgia Gulf as required by the Declaratory Judgment Act. Therefore, Georgia Gulf's motion to dismiss shall be granted.

### NAS's Motion for Summary Judgment

"Summary judgment is appropriate only if there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To determine whether there are any genuine issues of material fact, the court must first consult the applicable law to ascertain what factual issues are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). After that, the court must review the evidence bearing on those issues, viewing the facts and inferences in the light most favorable to

the nonmoving party. *Crescent Towing v. M/V Anax*, 40 F.3d 741, 743 (5th Cir.1994).

It is undisputed that Iberville Coatings in no way caused or contributed to the mustard gas release that occurred at Georgia Gulf's plant in Plaquemine. However, Iberville Coatings' potential liability arises not from the actual release itself, but from its contractual obligation to indemnify Georgia Gulf, in the referenced subcontracts between Harmony and Iberville Coatings' employees.

In turn, NAS, as Iberville Coatings' insurer, insured such contracts as "insured contracts" under the terms of the subject CGL policy. Specifically, coverage A of the NAS policy provides coverage for those sums that Iberville Coatings becomes obligated to pay as damages because of bodily injury or property damage. This coverage includes damages for bodily injury or property damage assumed in a contract or agreement that is an "insured contract." [3] The NAS policy defines an "insured contract" as including "[t]hat part of any other contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization".[4]

NAS has filed a motion for summary judgment on its declaratory judgment action. Essentially, NAS argues that the "Total Pollution Exclusion", in its CGL policy issued to Iberville Coatings, precludes coverage.[5] The magistrate judge recommended granting NAS's motion based upon the Louisiana Supreme Court decision in *Ducote v. Koch Pipeline Co.*, 730 So.2d 432 (La.1999) and the general rules of contract construction. Both Iberville Coatings and Georgia Gulf have filed objections to the magistrate's report. Af-

---

**3.** NAS Policy, Section I–Coverage, para. 2(b)(1). The policy also contains, of course, the usual "duty to defend" clause extending to false claims.

**4.** NAS Policy, Section V–Definitions, Para. 6(f).

**5.** NAS suggests that there are other relevant provisions which serve to preclude coverage. However, the court finds that these exclusions do not preclude coverage.

ter a "de novo" review of the record and the applicable law, the court finds that "Total Pollution Exclusion" is ambiguous as applied to the facts of this case.

The "Total Pollution Exclusion" has an extensive history. The pollution exclusion was drafted during the early 1980's and was incorporated into the standard form CGL in 1986. The total exclusion was designed to bar coverage for gradual environmental damage of any type and to preclude coverage responsibility for government-mandated cleanup such as Superfund, which was enacted in 1980.[6]

Since that time, the total pollution exclusion has spawned extensive litigation. One of the main contested issues is the scope and applicability of the exclusion. In 1999, the Louisiana Supreme Court expanded the scope of the "Total Pollution Exclusion" in *Ducote*, 730 So.2d at 432. Prior to that decision, Louisiana law limited the scope of the pollution exclusion to **Insureds** who actively and intentionally caused a polluting event. In *Ducote*, plaintiffs filed suit alleging that they sustained personal injuries as a result of exposure to anhydrous ammonia. The exposure occurred as a result of the negligent acts of a contractor whose employee accidently struck a pipeline causing the ammonia to be released into the atmosphere. The contractor's insurer denied coverage based upon the pollution exclusion contained in the policy. The Court held that the pollution exclusion precluded coverage. In doing so, the Court rejected the prior case law limiting the pollution exclusion to active industrial polluters who intentionally pollute. It held that the exclusion applied regardless of whether the release of pollutants was intentional or accidental. *Id.* at 437.

■ In the present case, NAS attempts to expand the scope of the *Ducote* case even further. NAS suggests that *Ducote* stands for the proposition that "it matters not who caused the pollution which, in turn, caused the bodily injury; rather, all that matters is that the bodily injury for which recompense is sought is caused by pollution—if so, it is not covered no matter who caused the pollution to happen."[7] NAS's interpretation of that ruling is misplaced.

*Ducote* did not address the issue is whether the "Total Pollution Exclusion" is limited to the **insured's** polluting acts or also excludes coverage for the polluting **acts of others** as well. What the *Ducote* decision held was that the pollution exclusion at issue applies to the accidental as well as intentional release of pollutants. Nowhere in that decision was the issue before this court addressed.

This court has seen the "Total Pollution Exclusion" before. For example, in *Resure, Inc. v. Chemical Distributors, Inc.*, 927 F.Supp. 190 (M.D.La.1996), a parked tanker truck exploded, destroying several nearby vehicles and releasing a plume of contaminants into the atmosphere. Suits were filed seeking damages for personal injuries suffered after being exposed to the released contaminants. Among the defendants was Chemical Distributors, Inc. ("CDI"). Although CDI did not actively cause the explosion, the truck had been previously leased to CDI. The explosion was allegedly caused in part by CDI's failure to thoroughly clean the inside of the tank at the end of CDI's lease term.

There, as here, the commercial general liability insurer sought a declaratory judgment that the polluting event came within the policy's pollution exclusion clause. The pollution exclusion clause at issue in

---

6. See William P. Shelley and Richard C. Mason, Application of the Absolute Pollution Exclusion to Toxic Tort Claims: Will Courts Choose Policy Construction or Deconstruction?, 33 Tort & Ins. L.J. 753–54 (1998).

7. North American Specialty Insurance Company's Combined Memorandum in Reply to Iberville Coatings Inc.'s and Georgia Gulf Corporation's Oppositions to North American Specialty Insurance Company's Motion for Summary Judgment, p.3

that case made it clear that it applied to the insured's activities as well as the activities of others.

In an effort to avoid summary judgment, CDI argued that, based on its history, pollution exclusion clauses are generally directed at the insured's own polluting activities and not the acts of others. The court rejected this argument, holding: "This argument is without merit. The second paragraph of the clause expressly states that this particular exclusion applies **regardless of whether the discharge results from the insured's activities or from the activities of others.**" *Resure*, 927 F.Supp. at 193 (emphasis added).

Unfortunately, the pollution exclusion clause now before the court is not so unambiguous. The pollution exclusion clause in NAS's policy of insurance issued to Iberville Coatings states as follows:

This insurance does not apply to:

f.(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

After a careful consideration of the policy exclusion, the court finds the clause ambiguous for two reasons. First, paragraph one of the exclusion fails to specify whether it applies only with respect to discharges caused by the policyholder or to discharges caused by third persons as well. Secondly, paragraph two of the exclusion specifically makes reference to the activities of "others" with respect to clean up and other remedial measures, thereby rendering paragraph one subject to inconsistent interpretations. Under the principles of contract construction, this ambiguity must be construed in favor of the insured.

Accordingly, the motion by Georgia Gulf to dismiss is hereby GRANTED and the motion by North American Specialty Insurance Company for summary judgment is hereby DENIED.