MATTHEWS, FINLEY & Co. *v.* THEIR CREDITORS—R. W. McKENZIE, Opponent and Appellant.

If a deposit be made of money, not sealed up in a package, but counted out and extended on the pass book in the form of an open account, and credited as cash to the depositor, and the face of the account shows that there was not a deposit of bills, or coin or packages to be restored identically' the deposit is at the risk of the depositary, and it cannot be regarded as a real deposit. Such a deposit creates between the parties the relation of a debtor and creditor, and gives to the depositaries the right to use the money in the course of their business.

APPEAL from the Fifth District Court of New Orleans, *Augustin*, J. *Walker & Pierce*, for plaintiff. *Larue & Whitaker*, for opponents and appellants.

SPOFFORD, J. *Matthews, Finley & Co.*, private bankers in the city of New Orleans, having failed, made a voluntary cession in favor of their creditors.

A majority in number and amount voted for their discharge, under the insolvent laws of the State.

*Roderich McKenzie*, and *Terry & Simpson*, opposed their discharge, and sought to convict them of fraud, alleging that they were unfaithful depositaries.

Both cases were tried by jury, and resulted in verdicts and judgments in favor of *Matthews, Finley & Co.* The opponents have appealed, and the two causes have been submitted together upon one record.

The case of *McKenzie* is the strongest against the insolvent.

He contends in argument, and alleges, substantially, in his opposition (although the allegations are not entirely free from ambiguity), that he made a real deposit of $1,200, with *Matthews, Finley & Co.*, before their failure, which they refuse to return to him in kind, as they bound themselves to do, but have placed him on their bilan as an ordinary creditor for the amount of $1,200, and in so doing have been unfaithful and fraudulent depositaries, and have violated a fiduciary trust; he, therefore, prays that they may be deprived of the benefit of their surrender, and that he may have judgment for the sum of $1,200, by preference to all other persons whatsoever, and for other relief according to law and equity.

The sole question for solution is, did the opponent, *McKenzie*, make a real deposit of the $1,200, with *Matthews, Finley & Co.*?

"The distinction formerly established by law between the perfect and the imperfect deposit, is abolished.

The *only real deposit* is that where the depositary receives a thing to be preserved in kind, without the power of using it, and on the condition that he is to restore the identical object." C. C. 2934.

The irregular deposit is thus accurately defined by *Troplong:* "Le dépôt irrégulier est celui qui a lieu quand on dépose une somme d'argent ou autre chose fongible chez *un dépositaire, en lui permettant de s'en servir.* Cette autorisation transfère au dépositaire le domaine de la chose." Troplong, Du Dépôt, § 115.

There can be no serious difficulty in deciding to which of these two well defined classes the deposit made by *McKenzie* belonged.

The evidence of the deposit is contained in his own bank book, offered by himself. By this it appears that he opened an account with *Matthews, Finley & Co.*, with a debtor and creditor side. In this account, *Matthews, Finley & Co.*, debited themselves, "May 6th, 1854, to cash $800; May 22d, do $250; July 17th, do $150." There are are no credits entered or claimed.

Over against the date 1854 is written the word "special" under the heading "*Matthews, Finley & Co.* in account with *Rod. McKenzie.*"

The obvious meaning of the word is that a special account was opened, subject to the particular convention of the parties at the time of opening it.

The face of the account shows that there was not a deposit of bills or coins or packages to be restored identically.

The money was counted and debited to the depositaries, in an ordinary pass book, simply as so much cash.

The custom of bankers and the understanding of business men as established without a dissenting voice, by witnesses introduced by the opponent, support the position that this could not have been a real deposit.

Both the custom and common understanding of men, as shown by this testimony, seem to conform strictly to the law.

Thus, special or real deposits of money are usually sealed up, and not counted by the banker, (C. C. 2914,) they are at least in some important respects at the risk of the depositor, and are to be returned in kind, (C. C. 2910, 2915, 2916) the depositor, in such a case, takes a receipt, or if he has a bank book and keeps a deposit account, the real deposit is entered in the margin of the bank book, but the amount is not extended; the box or package containing the real deposit, is endorsed with the depositor's name, and is put away by itself in the vault, there to remain until demanded by the owner; and checks cannot be drawn against it.

None of these things can be predicated of the deposit in question. *McKenzie* does not pretend to know what particular money he deposited with his bankers; it was not sealed up in a package, but was counted out, extended on the pass book in the form of an open account, and credited as cash to the depositor; it was at the risk of the depositaries, so that if the identical moneys handed them by *McKenzie* had been immediately afterwards destroyed by inevitable accident or overpowering force, they would still have owed him the amount; and it was subject to be checked for by him.

To that end *McKenzie*, at the time of opening his account with the bankers, registered his name in their signature book, which was produced on the trial; this is not done when only a real deposit is made, because such a deposit cannot be checked for.

The clerks of the house testify that the word "special" was placed under the heading of the account, to signify that the money was to draw six per cent. interest if left there after a certain length of time; it is not very material whether the fact were so or not, as, under all the surrounding circumstances, the deposit could not be regarded as a real deposit, even without such testimony.

The opponent may have been ignorant of the legal effects of the contract he entered into, but we do not perceive that he was designedly misled by the defendants. The business was transacted by their clerks, and there is no evidence that they sought any advantage of the opponent. They were, therefore, properly acquitted of the charge of bad faith.

This being an irregular deposit, the depositaries had a right to use it in the course of their business; the relation of debtor and creditor arose between them and the depositor ; *le domaine de la chose,* the power of using the money passed to them, and the obligation of returning, not the same, but a like amount was assumed by them ; their ability to do so depended upon their wealth, credit and the vicissitudes of business ; the result was disastrous to the depositor, but the law, whether wisely or unwisely, it is not for us to say, gives him no privilege over other creditors for his debt.

The District Judge presented in plain and forcible language the precise issue to the jury, when he said, "If the jury find that the money deposited was to be returned in kind, it was their duty to give a verdict for the plaintiff."

Their verdict for the defendants, under such a charge, strongly corroborates our own view of the facts which they had the advantage of hearing from the mouths of the witnesses. We conclude that the defendants cannot be regarded as " unfaithful depositaries," in the sense of the Article 2929, of the Civil Code.

It is, therefore, ordered that the judgment in favor of *Matthews, Finley & Co.* on the opposition of *Roderich McKenzie,* be affirmed with costs.