BEER, Judge.
Consumer Money Order Corporation of America (hereafter, Consumer) and Najle Kafati and Magdelena Kafati d/b/a Hart-son Food Store (hereinafter, Kafati) signed a contract under the terms of which Kafati agreed to act as Consumer’s agent for the sale of its money orders and to remit the weekly proceeds derived therefrom. In accordance with Section 5 of the contract Mr. Santos Mangipano, an employee of Consumer, collected the proceeds on Tuesday of every week. This arrangement continued for over two years. Then Mr. Mangipano retired and Kafati commenced the practice of mailing the weekly proceeds to Consumer, an alternative method of re *252 mittance specifically provided for in Section 5 of the contract. He continued to mail the money to Consumer at its office in St. Louis for about a year. His “commission” from the sale of the money orders was slightly increased to compensate him for this change in the remittance arrangement.
At some subsequent time, not clear from the record, Kafati commenced the procedure of personally depositing the funds collected during the previous week into Consumer’s own local bank account. This method of procedure .is not mentioned in Section 5 nor anywhere else in the written contract. Kafati was following this procedure on April 4, 1974 when an undisputed theft of the proceeds in his physical possession occurred as he was enroute to Consumer’s local bank. Kafati’s responsibility to account for the stolen proceeds under these specific particular circumstances is the issue. The trial court rendered judgment in favor of Kafati and Consumer appeals.
Kafati admits signing the written contract but denies having read or understood it and thus seeks, as a threshold issue, to avoid its applicability. His contention on this point has no merit. Clearly, he is presumed to know the content of the contract he has signed and cannot avoid his obligations by contending that he did not read it or that he could not understand its provisions. Ideal Loan of N. O., Inc. v. Johnson, 218 So.2d 634 (La.App. 4th Cir. 1969); South Central Bell Tele. Co. v. McKay, 285 So.2d 563 (La.App. 1st Cir. 1973). Thus, the contract governs if the factual situation falls within its provisions.
Section 5 (of the contract) provides two methods for the transmission of collected funds: (1) Consumer may send its own employee to collect the funds or (2) Kafati may mail the proceeds. The unrefuted testimony regarding what transpired on the day of the theft indicates a third method of transmission, not mentioned in the written contract, was in effect.
Kafati argues that the indemnity provision of the contract which would impose responsibility upon him was altered when he began making delivery of the funds directly to Consumer’s local bank for deposit in their account. He avers that this was a procedure not contemplated — and thus not governed — by the contract. Specifically, he contends that at the moment of the theft he was, in effect, acting for Consumer as their bank messenger.
The record is silent as to the factual basis upon which Kafati began to personally deliver and deposit the proceeds into Consumer’s local bank account. A careful reading of the testimony fails to reveal how Kafati and Consumer confected this arrangement nor is there any evidence outlining the terms or duration of this method of transmitting the funds. We cannot make unsupported assumptions regarding the genesis of this agreement or the circumstances of its birth. Thus, we are unable to fathom the intention of the parties relative to modification or repudiation of the indemnity provision of the written contract.
Though the Code provides us with methods for the interpretation of contracts, here the lack of evidence precludes our utilization of the methodology detailed by the Civil Code and followed by the Supreme Court in, for example, Jacka v. Ouachita Parish School Board, 249 La. 223, 186 So.2d 571 (La.1966). The evidence simply does not show if the parties agreed, or intended to agree, to modification or repudiation of the indemnity provision of the contract when they confected the existent method of transmitting the funds.
We conclude that evidence of the details of the confecting of the method of transmittal of funds (in operation at the time of the undisputed theft) is necessary in order to determine if Kafati must reimburse Consumer under Section 8 of the *253 contract providing for indemnification for losses under certain circumstances or if, on the other hand, the transmittal agreement was apparently independent of the contract under which circumstances Kafati would be acting for and in behalf of Consumer as their messenger.
The judgment is annulled and set aside and this matter remanded for further proceedings consistent with the views expressed herein.

Annulled, set aside; remanded.