344 So.2d 16 (1977)
HIBERNIA NATIONAL BANK IN NEW ORLEANS
v.
Mable LEE.
Mable LEE
v.
HIBERNIA NATIONAL BANK IN NEW ORLEANS.
Nos. 7935, 7936.
Court of Appeal of Louisiana, Fourth Circuit.
February 23, 1977.
Rehearings Denied April 13, 1977.
*17 Fabacher & Murov, Mark G. Murov, New Orleans, for defendant-appellant.
Favret, Favret & Demarest, Thomas J. Lutkewitte, New Orleans, for plaintiff-appellee.
Before SAMUEL, REDMANN and BEER, JJ.
BEER, Judge.
Appellant, Mable Lee, purchased an automobile on November 25, 1974, and, in connection therewith, executed a promissory note for $3,308.10, payable to "Bearer at the main office of Hibernia National Bank" (hereafter, "Hibernia"). She made several payments to Hibernia by checks drawn on her checking account at Bank of Louisiana, and, then, on August 30, 1975, opened a checking account with Hibernia, signing, at that time, a signature card which contained the proviso that:
"2. Bank shall have right to charge against Account any liabilities whatsoever of any Depositor to Bank . . ."
She made some further payments to Hibernia from her Hibernia checking account but then missed the payments due in September and October, 1975. However, she made a payment "in the range of $40.00" on or about October 31, 1975, for the privilege of deferring the two past due payments until November. No payments were made in November or December of 1975. Lee contends that she sought to make a payment on her loan account on January 2, 1976, at the Mid City office of Hibernia, but Miss Ann Marie Lodato, a drive-up window teller at that branch, testified that, on January 2, Lee presented two checks (one for $110.27 and a payroll check for $200.47) totaling $310.74, and a deposit slip for $175.00. Lodato treated this as a "cash transaction," and paid Lee $135.74 in cash, and a credit to her checking account for $175.00. Thus, the bank had no record of a January, 1976 loan payment (none having been made as far as their records were concerned), and the transaction showing on their records only as a cash transaction and checking account deposit.
Having received no loan payments, the bank warned Lee on January 20, 1976, and, *18 again, at the end of January, that she was delinquent. Apparently these efforts on the part of the bank caused Lee to forward a check dated January 30, 1976, in the amount of $220.54, which appears to have been cashed on February 4, 1976. If this payment was attributed to the past due payments for September and October, it, nevertheless, left unpaid the installments due in November and December of 1975 and January of 1976. Thus, on February 27, 1976, Hibernia "froze" a balance of $686.08 in Lee's checking account, having already (February 5, 1976) instituted suit on the note and seizure of the automobile.
Lee filed suit against Hibernia on March 6, 1976, seeking damages for wrongful seizure and wrongful dishonor of her checks (which resulted from the freezing) and also sought injunctive relief. Her claims against Hibernia were consolidated for trial with Hibernia's hypothecary action via executiva. All of Lee's claims were dismissed by the trial court, but she devolutively appeals the rejection of her demand for damages arising from the allegedly improper freezing of her checking account. Thus, the issue here is whether Lee has waived her LSA-C.C. Art. 2210(2) rights as well as her constitutional procedural due process rights to "hearing" and "notice" by the signing of the signature card containing the waiver proviso. We answer this affirmatively under the particular facts of this case.
The signature card refers on its face to the written terms on its reverse, and Lee admits to having signed it. The terms, germane to this case, are clear, unambiguous and unequivocal. Lee is presumed to understand these terms and is bound by the waiver she effectuated. Lama v. Manale, 218 La. 511, 50 So.2d 15, 23 A.L.R.2d 1312 (1950); Consumer Money Order Corp. of America v. Kfati, 320 So.2d 251 (La.App.4th Cir., 1975).
Hibernia's action of offset or compensation does not amount to "state action" but, rather, is private action, and thus is not subject to the procedural due process requirements of the Fourteenth Amendment. See "Post-Sniadach Status of Banker's Right To Set Off Bank's Claim Against Depositor's Funds," 65 A.L.R.3d 1284, which cites Fletcher v. Rhode Island Hospital Trust Nat. Bank, (1974, C.A. 1, R.I.) 496 F.2d 927, cert. den. 419 U.S. 1001, 95 S.Ct. 320, 42 L.Ed.2d 277. Also note Nietzel v. Farmers & Merchants State Bank of Breckenridge, Minn., 238 N.W.2d 437.
When Lee signed the obverse side of the Hibernia Bank signature card on August 20, 1975, she knew that monthly installment payments were already being made by her on a monthly basis to Hibernia covering her automobile loan. That signature card specifically referred on its obverse side to an agreement on the part of the signatory (herself) to be bound by the terms on its reverse side. Those terms set up the bank's right to proceed, without prior notice, as it did here.
Charged with this knowledge, Lee continued to maintain her checking account at the bank. She cannot now be heard to say that her lack of inquiry and/or understanding of her agreement with the bank obviates its effectiveness. Accordingly, the judgment of the Civil District Court for the Parish of Orleans is affirmed at appellant's cost.
AFFIRMED.
SAMUEL Judge, concurring.
I write this concurrence for the purpose of hopefully clearing up what appears to be differing factual conclusions between the writers of the majority and dissenting opinions.
The crucial issue is whether Mable Lee paid a monthly installment on the note in suit by means of her January 2, 1976 check. If that installment was so paid, in which event there would be no delinquent indebtedness due the bank, her checking account should not have been "frozen", the foreclosure was improper, and the trial court judgment should be reversed. If that installment was not so paid, and there is no contention that it was paid in any other manner, she was delinquent in making the installment payments called for by the note, *19 under the provisions of the note and the checking account signature card the bank was within its rights to foreclose and to "freeze" the checking account, and the judgment appealed from should be affirmed.
The January 2 check is payable to "Hibernia Bank" in the amount of $110.27 (the amount of an installment payment), contains Miss Lee's loan account number on a line in the lower left corner, and is stamped "CASHED" by the bank. The transaction involving the check took place at a drive-up window of one of the bank's branches. It included two checks, the January 2 check in question and a payroll check for $200.47, and a deposit slip for $175. Although a payment coupon is customarily included when an installment payment is made in this fashion, no such coupon was presented by Miss Lee. Only two witnesses testified as to the factual details, Miss Lee and the bank teller who handled the transaction, and their testimony is conflicting.
Miss Lee testified she received about $40 in cash as a result of the transaction, an amount which indicated to her the installment payment had been made. On the other hand, the bank teller testified as follows: She had not noticed the account number in the lower left corner of the check because such lines are usually used for the drawer's convenience and future information (such as groceries, laundry, etc.) and because of the absence of the usual coupon. Accordingly, she treated the check as a cash item, totaled the two checks ($310.74), credited Miss Lee's account with a deposit of $175, subtracted $175 from the $310.74, and paid Miss Lee $135.74. She also testified that after the usual rechecking by herself and, later, other employees at the downtown bank her accounts showed she was short $3.44 for the day. A tape from her teller machine was offered in evidence and that tape substantiates her testimony. Thus, the teller's testimony is that Miss Lee received in cash the full amount of her January 2 check for $110.27.
I am satisfied the trial judge accepted the testimony of the bank teller and rejected the testimony of Miss Lee. As there is ample evidence to support this finding, we must accept his conclusion.[1]
Accordingly, I respectfully concur.
REDMANN, Judge, dissenting.
Imagine paying your bank a loan installment with a $110.27 check payable to its order and annotated "Consumer Credit" and "For # XX-XXXXXX" (the bank's number on your note), and thereafter being told by the bank that you did not pay that loan: that you cashed that check!
Imagine sending another check for $220.54 for two installments and being told that it was not received until February 5 despite the bank's own date stamp of February 4. (Forget your assertion that you left the check in the bank's night depository on Friday, January 30.) Imagine the bank then instituting mortgage foreclosure proceedings on February 5, when you have paid all installments of the loan then due[1] (although you were warned to bring the loan current by January 31, including paying again the installment the bank said you cashed).
Finally, imagine that on February 27, after having seized your mortgaged automobile in the foreclosure, the bank also blocks your checking account balance of $686.08, claiming to act under some fine-print right to charge your liabilities against the accounta right the bank did not exercise in order to keep your loan current.
Those are the facts of this case.
On January 2, 1976, defendant presented to plaintiff Hibernia her check for $110.27 the exact amount of her loan installmentpayable to the order of "Hibernia *20 Bank", "For #XX-XXXXXX" "Consumer Credit". Hibernia, however, did not treat this check as payment of an installment on Loan No. 11-016596 in its consumer credit department, because, in addition to stamping the bank's indorsement on the reverse side of the check, Hibernia's teller stamped it "cashed" and made an entry on her accounting machine describing it as a check she had cashed (as if it were payable to cash or to bearer).
That check was not payable to bearer in fact or in law. In fact, it was payable to Hibernia. In law, it was not bearer paper because its designation of "Hibernia Bank" as order-payee is not one of the designations of payee that make the check payable to bearer under La.R.S. 10:3-111 [U.C.C. 3-111].[2] The former La.R.S. 7:9(3) [unlike N.I.L. § 9(3)] made bearer paper of an instrument "payable to the order of a . . . living person not intended to have any interest in it, and such fact was known to the person making it so payable .. ." Under that now-repealed law, it was not unheard of that a drawee bank should accept for encashment checks on which it was itself the payee (although the only example this author has heard of is Fidelity & Cas. Co. of N. Y. v. United States F. & G. Co., La.App. 2 Cir. 1955, 81 So.2d 576, writ refused). Today, however, plaintiff Hibernia cannot claim that checks drawn on itself and payable to itself are payable to bearer because present law, R.S. 10:3-111, does not admit such a classification of such an instrument.
If a bank can assert that it "cashed" checks payable to itself, then so can every other creditor whom the debtor claims to have "paid" by check. "Your cancelled check is your receipt" must, in the future, be ridiculed rather than preached as it is by so many businessmen today. No payment by check will assure anything; the debtor who pays by check can still face a swearing contest with a dishonest or mistaken creditor or creditor's employee. (Our creditor's teller's own accounting-machine convicts her of being mistakenalthough in a net amount only, and in an amount other than $110.27.) Public policy demands that a bank itself abide banking law as its depositors must when that law's harsh technicality protects the bank against liability even for charging forgeries to a depositor, as did our plaintiff Hibernia in Victory Elec. Wks. Inc. v. Maryland Cas. Co., La.App. 4 Cir. 1970, 230 So.2d 287, writ refused 255 La. 814, 233 So. 251.
Far worse, far more insufferableindeed reprehensibleis plaintiff Hibernia's behavior after January. Hibernia claims, under the fine-printed agreement on its signature cards, the "right to charge against Account any liabilities whatsoever of any Depositor to Bank." Yet Hibernia did not charge defendant's account with the three installments totalling $330.81 which it deemed due at the end of January (including the installment that should be counted paid by the January 2 check of $110.27 payable to Hibernia which it claims to have cashed). Nor, after defendant's admitted February 5 (or 4) payment of $220.54, did Hibernia charge the one $110.27 installment which it (insupportably) counted still due.
No. Hibernia elected to forego such simple measures, and instead elected on February 5 to foreclose its chattel mortgage. And that election may, indeed, have been its privilege, not subject to valid criticism (pretermitting that defendant had paid every installment that was then due!).
But then, to cap the car-foreclosure climax, Hibernia on February 27 "froze" defendant's checking account and its $686.08 balance, and thereafter dishonored defendant's checks! Thus Hibernia first bypassed its alleged authority to charge against defendant's account when to do so would have saved defendant from foreclosure, but then Hibernia, after beginning foreclosure, still not charging its claim against defendant's *21 account, somehow supposed itself entitled to abuse its depositor by "freezing" her account[3] and dishonoring her checksall without any notice to defendant, and with full knowledge of the dispute between defendant and itself over the check payable to itself as a loan installment which it asserted it cashed.
This blocking of defendant's checking account is impermissible as a matter of simple civil law.
The civil law is that one obtains a pledge by bargaining for itby contract, C.C. 8133. Hibernia had no pledge. It had a right to charge, which it could have exercised when it had a fixed dollar amount to levy ($110.27, $220.54 or even $330.81). However, after Hibernia elected to foreclose on its mortgage and thereby deprive defendant of her automobile, it had no right to pledge to itself its depositor's checking account balance, as a security for any defieiency of debt over foreclosure proceeds. Hibernia had no authority under civil law to "freeze" defendant's account: to the contrary, Hibernia's obligation was that of every bank, namely to pay its depositor's funds to its depositor's order. Hibernia breached its obligation.[4]
We should order injunction to issue, on bond fixed by the trial judge, prohibiting Hibernia from blocking defendant Lee's checking account; and we should remand for trial of Lee's demand for damages in ordinary course.
NOTES
[1] See Canter v. Koehring, La., 283 So.2d 716.
[1] Hibernia's counsel stipulated (T-7) that the October 31, 1975 $40 payment "was paid for the privilege of deferring two installments to the rear of the contract""in other words, the terms of the loan were extended by two months." Thus in January 1976 the only installments due were those for November, December and January.
[2] An instrument is payable to bearer when by its terms it is payable to

(a) bearer or the order of bearer; or
(b) a specified person or bearer; or
(c) "cash" or the order of "cash" or any other indication which does not purport to designate a specific payee.
[3] Hibernia's hindsight position that compensation under C.C. 2207 took place and extinguished defendant's checking account balance is self-contradictory and self-defeating. If compensation occurs between a bank's claim for its loan and its loan customer's checking or savings account, then compensation would have occurred when each installment became due and therefore the loan could not have been overdue.
[4] The law's prohibition against compensation in case of "a demand of restitution of a deposit. . .", C.C. 2210, is not applicable. A bank account is not a deposit Within C.C. 2926's definition because the bank receiving a depositor's cash or check "deposit" does not bind itself "to preserve it and return it in kind." The bank's liability is simple debt; see Matthews, Finley & Co. v. Their Creditors, 1855, 10 La.Ann. 342. Moreover, Hibernia never charged a compensation or set-off against defendant's account, but merely "froze" it.