COLE, Judge.
The question presented on appeal is whether the disclosure statement provided by a lending institution during a consumer loan transaction violated the federal Truth in Lending Act. Specifically, it must be determined whether the right of the lending institution to charge the promissory note, after maturity, to the checking account maintained with it by the consumer, created a “security interest” within the purview of the Truth in Lending Act.
FACTS
Mrs. Edna Alford, defendant, negotiated a loan from the First Guaranty Bank, plaintiff, where she maintained a checking account. A promissory note in the amount of $1,260.36 was executed[1] by Mrs. Alford on October 15, 1979, payable in eighteen equal and consecutive monthly installments of $70.02, beginning November 15, 1979. The face amount of the note included precomputed finance charges totaling $241.45, based upon an annual percentage rate (APR) of 28%. Mrs. Alford paid $378.26 on the indebtedness. However, when she became five months in arrears the bank exercised its right pursuant to the note’s acceleration clause and sought payment in full.
On October 9,1980, the bank filed suit on the promissory note seeking $818.56, the balance remaining unpaid after a rebate of unearned interest, together with contractual interest, late charges, attorney fees and all costs of the proceedings.
On October 31, 1980, Mrs. Alford answered the suit asserting La.R.S. 9:3522 would limit the bank to collecting 28% interest for one year from the note’s maturity and 8% APR, thereafter. Further, as an affirmative defense, Mrs. Alford asserted a violation of the federal credit disclosure requirements contained in Regulation Z § 226.8(b)(5). On November 17, 1980, Mrs. Alford filed a reconventional demand, the cause of action being the violation previously asserted as the affirmative defense. The demand sought a penalty of double the finance charge along with attorney’s fees and costs pursuant to 15 U.S.C. § 1640(a).
The bank filed the peremptory exception raising the objection of prescription to Mrs. Alford’s reconventional demand. Trial on the merits was held on February 4, 1981. The matter was taken under advisement by the court for approximately two years, after which the presiding judge recused himself voluntarily and appointed a Judge Ad Hoc to proceed with the matter. At this juncture it was discovered the taped transcript of the trial had either..been lost or erased. Opposing counsels then submitted the matter to the court upon stipulations.
On January 5, 1984 the court handed down reasons for judgment, holding the language in the note giving the Bank a right of set off did not create a “security interest” within the meaning of the Federal Truth in Lending statute and did not, therefore, have to be identified as such on the disclosure statement. Finding on the merits no violation of the Truth in Lending statute, the court rendered judgment on the note in favor of plaintiff and dismissed defendant’s reconventional demand. A ruling on the objection of prescription was obviously pretermitted.
Defendant’s appeal assigns four errors, all relating to the question of whether or not the language in the promissory note constituted a “security interest.” We agree with the trial court’s conclusion it did not and, therefore, affirm. In support thereof, we adopt the excellent reasons handed down by the trial judge and by attachment hereto incorporate them as a *475 part of this opinion. Costs on appeal are assessed against defendant.
AFFIRMED.
HAMMOND CITY COURT, 7TH WARD
PARISH OF TANGIPAHOA
STATE OF LOUISIANA
NUMBER 8171 DIVISION B
Jan. 12, 1984
REASONS FOR JUDGMENT
To this suit on a promissory note by the creditor, First Guaranty Bank, the Defendant, Edna Alford, asserts a violation of the Federal Truth in Lending Act as an affirmative defense. It is stipulated that the loan transaction giving rise to the note sued on is subject to 15 U.S.C. § 1601, Regulation Z, and R.S. 9:3510, the Louisiana Consumer Credit Act. The Defendant tenders this defense: the note sued on contains the following language:
“It is also agreed that at its maturity or any day thereafter the note may be charged to the account of the maker, endorser, or endorsers, or sureties, or any of them with said bank or if the amount to the credit of any or all of their accounts is not sufficient to pay this note in full, whatever sum stands to the credit of any or all of said parties to this note on the books of said bank, may applied to its payment; but a failure to so apply such funds shall in no way affect the note or release any of the parties thereto, nor shall the said bank ever be held liable for any holder or owner of said note on account of its failure or refusal to so apply any of said funds.”
but the truth in lending disclosure statement furnished the debtor does not identify the creditor’s right to granted as a “security interest.” Defendant asserts that this failure violates 15 U.S.C. § 1639(a)(8), a statute now repealed, and allows her to offset damages for the violation against any sum she owes the creditor.
There are three potential issues with respect to the defense. (1) Is the Bank’s right of set off a “security interest” within the meaning of the Federal statute so that it must be identified as such on the truth in lending disclosure statement? (2) If it is, has the Bank’s violation of the Federal statute prescribed? (3) If it has prescribed, may nevertheless Defendant use the prescribed violation as a defense to the Bank’s suit on the note?
“Security interest” is a term which, although frequently used as commercial jargon, is not used as a term of legal art in Louisiana. Instead, we use privilege and mortgage (Civil Code, article 3184) or pledge (Civil Code, article 3133). The term is widely used as a term of art elsewhere in the United States, most notably in Article Nine of the Uniform Commercial Code which has been adopted in all jurisdictions except Louisiana. The Court is strongly of the opinion that the security interest referred to in 15 U.S.C. § 1639(a)(8) can be understood only in light of the Uniform Commercial Code.
The basic scope provision of Article Nine is Section 9-102. Except as otherwise provided in Section 9-104 on excluded transactions, article Nine applies:
(a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts;
(b) to any sale of accounts or chattel paper.
See, White & Summers, Uniform Commercial Code §§ 22-1 and 22-2. Section 9-104 specifically states that Article Nine does not (among other things) apply “to any right of set off.” Thus under Article Nine of the Uniform Commercial Code, the Bank’s right of set off would not be a security interest.
That conclusion, however, is by no means the end of the inquiry. While the Federal Truth in Lending Act does not define “Security Interest”, Regulation Z does:
“Security interest and security means any interest in property which secures payment or performance of the obli *476 gation. The terms include but are not limited to security interest under the Uniform Commercial Code, real property mortgages, deeds of trust, and other confessed liens whether or not recorded, mechanics, materialmen’s, artisans and other similar liens, vendors liens in both real and personal property, the interest in a seller in a contract for the sale of real property, any lien on property arising by operation of law, and any interest in a lease when used to secure payment or performance of an obligation.”
Regulation Z seeks to embrace real estate security (excluded from the Uniform Commercial Code) and common statutory liens as well as the Article Nine security interest. It is noteworthy that a right of set off is not listed as a security interest in the Regulation Z definition. From that definition, it seems proper to ask if the Bank’s set off rights are an interest “in property” and if so, does it secure payment of the note. Certainly, under Louisiana law, the set off rights are not an “interest in” property at all. (As the Court appreciates the common law, perhaps defectively, these same rights would not be an “interest in” property at common law either.) Rather, they are an example of compensation (see Civil Code, articles 2207-2216) by virtue of which liability between two persons mutually indebted is extinguished pro tanto. Nor, in any realistic sense, can the Bank’s rights set off rights be said “to secure” payment of the note. The deposits which the Bank might be able to set off or compensate against the note were subject to withdrawal at the will and order of the depositor at any time. Unlike a privilege or mortgage, the Bank’s right of set off gave it no right to follow any such deposits into the hands of a third party or even into the hands of the debtor herself. In these circumstances, the Court is of the opinion that the Bank’s right of set off is not a “security interest” within the intendment of Regulation Z or the Federal statute.
The Court is fortified in this conclusion by the fact that Defendant’s counsel in his scholarly brief fails to cite a single decision from any Court, State or Federal, anywhere in the United States, which has ever held that a right of set off is a security interest. The Court has been unable to find such a decision and believes that none exists. The reason is obvious. The model “security interest” contemplated (although not exclusively) is the Uniform Commercial Code, Article Nine security interest or its Louisiana equivalent or a real estate mortgage or statutory lien. Since the Uniform Commercial Code does not consider a right of set off as a security interest, none of the jurisdictions in which it is in force have deemed such rights a security interest under the Federal statute.
Defendant argues strenuously that the result should be different in Louisiana because compensation is different from set off, because compensation does not apply to a bank, because the Bank’s rights in this instance are contractual, in the nature of a pledge. The Court is wholly unpersuaded. The United States Constitution allows Congress to adopt statutes such as the Federal Truth in Lending Act, for one cogent reason, because uniform laws governing commercial transactions materially assist interstate commerce. Louisiana has long pursued a policy of adopting Uniform Laws which deal with commercial paper — a policy reflected by its adoption of the Uniform Negotiable Instruments Law and later Articles Three and Four of the Uniform Commercial Code. Congress undoubtedly intended the Federal Truth in Lending Act to apply as uniformly as local law made possible throughout the nation. Since a right of set off is not a “security interest” anywhere else in the nation, this Court would be willing to find that the curiosities of our law made it a “security interest” in Louisiana only in response to peremptory and unambiguous legislation.
The arguments offered by Defendant lacks that quality. In the first place, the common law term “set off” is functionally equivalent to “compensation” as that term is used in Louisiana law. Indeed, set off is commonly used in commercial jargon in Louisiana as a synonym for compensation. A comparison of the definition of “set off” *477 in Black’s Law Dictionary and the Civil Code definition of “compensation” reveal technical differences (which may be nothing more than different analytical terminology), but clearly they are functional equivalents. There is no reason whatever to believe that “compensation” would be considered a security interest in any common law jurisdiction although “set off” is not.
Defendant asserts, correctly, that Civil Code, article 2210, prohibits the depositary from claiming compensation against “a demand for restitution of the deposit...'.” See also, article 2956. The Court fails to see how this provision assists Defendant. In the first place, no “demand for restitution of a deposit” is at issue here. In the second place, as Defendant concedes, the language of the note sued on is such that Defendant plainly waived her rights under article 2210. Hibernia National Bank in New Orleans v. Lee, 344 So.2d 16 (La.App. 4th Cir.1977). Defendant’s claim that because the Bank’s right of set off is contractual it is a “security interest” is a circular argument which begs the question. Compensation or set off simply is not a security interest whether that right is contractual or statutory for reasons already stated.
Finally, Defendant argues that the Bank’s right of set off are a pledge of any funds which happen to be in the accounts if and when the Bank attempts to exercise its rights. The note sued on contains no language of pledge and does not even purport to create a pledge, unlike that in United States v. Harris, 249 F.Supp. 221 (W.D.La. 1966), cited by Defendant. Furthermore, Civil Code, article 3164 shows that the creditor who is in possession of the pledge cannot be compelled to return it unless the debt is paid in full. Such is the essence of a pledge and manifestly the Bank had no such right in this instance. The checking account, alleged pledged, was a demand deposit account upon which Defendant could draw at will. Pledges are not made of such stuff.
For these reasons, the Court sees no compelling reason to find that a right of set off is a “security interest” in Louisiana although it is not in any other jurisdiction. Therefore, the Court holds that the language of the note giving the Bank a right of set off is not a “security interest” within the meaning of the Federal Truth in Lending statute and, hence, it did not have to be identified as such on the disclosure statement. Defendant correctly states that the Federal statute is remedial in nature and should be construed liberally to rectify perceived “unscrupulous and predatory creditor practices.” No such practices have shown or even hinted at here and the Court feels that to interpret the Federal statute so that it has the same effect it seems to have in all other jurisdictions is appropriately liberal. Accordingly, the affirmative defense is rejected. There was no violation of the Truth in Lending Act.
There has been some argument about the contractual maturity date of the note sued on. It is now stipulated that the contractual maturity date is October 1, 1980, the date the Bank exercised its right to accelerate the debt. Accordingly, judgment will be rendered in favor of Plaintiff for the principal as prayed for, interest at the rate of 28% per annum from October 1, 1980 until, if not sooner paid, October 1, 1981, and thereafter at the rate of 8% per an-num, plus $3.50 late charges, a sum equal to 25% of principal and interest due as attorney fees and all costs of these proceedings.
Judgment will be rendered for Plaintiff as prayed for.
Denham Springs, Louisiana, this 5th day of January, 1984.
/s/ Raymond S. Bennett
Raymond S. Bennett,
City Judge, Ad Hoc

. A single document was executed which included both the promissory note and the disclosure statement required by federal authority.